UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN L. MCGILL, Plaintiff | : | |
| -VS- | : | Case No.: |
| MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Alias, Defendant | : | CA 05 481 S |

VERIFIED COMPLAINT

Now comes the Plaintiff, by and through counsel, and under oath does state:

THE PARTIES

1. The Plaintiff, John L. McGill (hereinafter, "the Plaintiff"), is a resident of the City of East Providence, County of Providence, State of Rhode Island;

2. At all times relevant hereto and upon information and belief, the Defendant, Minnesota Mutual Life Insurance Company (hereinafter, "the Defendant"), is a Minnesota corporation with its principal place of business located at 400 North Robert Street, St. Paul, Minnesota;

JURISDICTION

3. The Plaintiff avers that this Honorable Court has jurisdiction pursuant to 28 USCS §1332, insofar as the amount in controversy exceeds the sum or value of $75,000.00, and is between a citizen and a corporation of different states;

COUNT I - MISREPRESENTATION

4. On or about May 12, 1992, the Defendant prepared and presented to the Plaintiff a term sheet (hereinafter, the "Proposal") for long-term disability insurance, which Proposal provided that, in the event of a covered disability, the Defendant would pay the Plaintiff $3,400.00 per month in long-term disability benefit payments from 90 days after the date of a covered disability until age 65, plus inflation adjusted increases each succeeding year during the coverage period after the commencement of disability, plus a waiver of premium payments in the event of a covered disability;

5. On that same date, the Plaintiff, in reliance upon the representations in the Proposal prepared and presented by the Defendant, accepted the long-term disability policy proposal on

the terms so offered and commenced payment of the long-term disability insurance premium, as set forth in the Proposal;

6. In June, 1992, per the Defendant's request, the Plaintiff presented himself for a physical examination in connection with the long-term disability policy (hereinafter, the "Policy") conducted by a nurse employed by the Defendant;

7. On or about July 2, 1992, the Defendant issued the Policy to the Plaintiff provided for the payment of disability benefits in the event that the Plaintiff suffered a covered disability, however, the coverage provided for in the Policy, as written, did not conform to the terms of the Proposal that the Defendant made to the Plaintiff and which the Plaintiff had accepted; rather, the Policy as written provided materially and substantially less coverage than what had been offered to and accepted by the Plaintiff on May 12, 1992, in that it limited the disability benefit payment period to a maximum duration of five years or until the Plaintiff's 65th birthday, whichever came first, and included a premium increase of $25.00 per month;

8. In mid-July, 1992, the Defendant, by and through an authorized agent, telephone the Plaintiff and indicated that the Policy premium increased by $25.00 per month due to the Plaintiff's weight and blood pressure recorded at the physical examination;

9. At no time in July, 1992 did the Defendant inform the Plaintiff that the terms of the Policy were so materially and substantially changed that the disability benefit period was decreased from up to 65 years of age to 5 years or the earlier of 65 years of age, rather, the Defendant, by and through its authorized agent, assured the Plaintiff that the Policy as written provided the same coverage for which the Plaintiff had contracted in the Proposal, except for the $25.00 per month premium increase;

10. At that time, the Plaintiff consented to the premium increase, without having any knowledge or any way of knowing from the information provided to him that, for a higher monthly premium, Minnesota Mutual was purveying to him substantially less coverage in the Policy, as written, than what the Plaintiff had previously been offered and accepted;

11. On July 21, 1992, the Defendant allegedly wrote a letter to the Plaintiff informing him that it had decided to issue him a policy of long-term disability insurance and, among other things, that it was "necessary to make some changes to the policy we are offering." A true and accurate copy of said letter is attached hereto as Exhibit A (hereinafter, the "July 21, 1992 letter");

12. The Plaintiff did not receive a copy of the July 21, 1992 letter until May, 1996, which was four years after the letter had allegedly been written and the Policy issued and more than six months after the Plaintiff had become permanently disabled;

13. Even if the July 21, 1992 letter had been received timely by the Plaintiff, its contents would not have informed him of the materially reduced coverage period provided in the Policy, as written, as the letter contained no information so stating, and the Plaintiff would have reasonably believed that the Policy for which he continued to pay premiums was the Policy that

he had initially been offered and accepted except for the premium increase, to which he had consented;

14. At all times relevant hereto, the Defendant knew, but failed to disclose to the Plaintiff, that the duration of the long-term disability benefit coverage period of the Policy was a material and essential element of the Policy, and a material and essential element of the insurance contract for which the Plaintiff had bargained and contracted to purchase from the Defendant;

15. At all times relevant hereto, the Defendant concealed from the Plaintiff, intentionally or unintentionally, the fact that the long-term disability benefit coverage period of the Policy was limited to a maximum of five years, and that the Policy as written provided the same coverage terms as the coverage terms set forth in the Proposal that the Plaintiff had been offered and accepted;

16. Beginning on the anniversary date of the Policy, July 2, 1993, and on every successive anniversary date of the Policy thereafter until July 2, 1996, the Defendant forwarded an "Annual Policy Review" to the Plaintiff, which Reviews state among other things, "Your coverage cannot be cancelled as long as you continue paying premiums" and that the monthly disability benefit amount is $3,400.00, which conformed with the benefit amount set forth in the Proposal that the Plaintiff had been offered and accepted;

17. None of the Annual Policy Reviews state that the duration of the long-term disability benefit payments provided under the Policy, as written, is limited to five years or contains any information by which the Plaintiff could know that the Policy, as written, provides materially less coverage than the coverage that the Plaintiff had initially been offered and accepted;

18. The Plaintiff reasonably relied upon the Defendant's representations in July, 1992, by and through its authorized agent, that the Defendant had issued the Policy in conformity with the coverage terms the Plaintiff had bargained and contracted for, and as was provided in the May 12, 1992 Proposal;

19. In April, 1994, the Plaintiff was diagnosed with severe obstructive sleep apnea which, by November, 1995, had become so disabling that the Plaintiff was incapacitated from continuing to work at his occupation, and qualified him for the long-term disability benefits provided for in the Policy;

20. On or about November, 1995, the Plaintiff filed for disability benefits from the Defendant and then began receiving said benefits in the amount of $3,400.00 per month;

21. As of this juncture, the Plaintiff had never been furnished with a copy of the Policy, however, the Plaintiff reasonably believed, based upon the information he had been previously provided by the Defendant, that his disability benefits under the Policy would continue monthly until his 65th birthday;

22. The Plaintiff's date of birth is July 2, 1947, and he was 48 years old when he became permanently disabled;

23. In May, 1996, the Plaintiff telephoned the Defendant to inquire about the inflation protection clause referred to in the Annual Policy Reviews he had received and was informed for the first time that the Policy, as written, provided for disability benefit payments for a maximum of five years, and not until age 65 as the Plaintiff has originally been offered and had accepted;

24. Prior to being so informed in May, 1996, the Plaintiff had no knowledge whatsoever that the benefit payment term provide for in the Policy, as written, did not conform to the terms of the Proposal he had been offered and had accepted, but that it had been materially altered so as to provide substantially less coverage;

25. At all times relevant hereto, the Defendant materially altered the Policy's coverage terms to the Plaintiff's detriment, without the Plaintiff's knowledge, authority or consent, and without notice or disclosure thereof to the Plaintiff;

26. The Defendant made its final payment to the Plaintiff on or about February 1, 2001, pursuant to the terms of the Policy, as written, with its five-year maximum benefit period;

27. To date, the Plaintiff has demanded payment from the Defendant for the value of the disability benefit coverage extending to his 65th birthday, but the Defendants have failed and continue to fail to pay same;

28. As a direct and proximate result of the Defendant's continued misrepresentations to the Plaintiff, the Plaintiff will receive approximately $790,683.28 less in monthly long-term disability payments than he should have received had the Policy conformed to the terms set forth in the Proposal offered to him and accepted by him;

WHEREFORE, the Plaintiff, John L. McGill, hereby demands judgment against the Defendant, Minnesota Mutual Life Insurance Company, Alias, in an amount sufficient to confer jurisdiction upon this Honorable Court, together with interest, costs, and any other relief as this Honorable Court deems meet and just;

## COUNT II – BREACH OF CONTRACT

29. Paragraphs 1 – 28 are hereby incorporated by reference as if set forth fully herein;

30. On May 12, 1992, the Defendant's offer of the Proposal to the Plaintiff and the Plaintiff's acceptance thereof constitutes a completed contract between the Plaintiff and the Defendant;

31. Despite the fact that the Policy was not delivered to the Plaintiff prior to his becoming permanently disabled, its existence on the coverage terms agreed to as of May 12, 1992 was repeatedly confirmed to him through various communications from the Defendant, by and through its agent(s);

32. Beginning on February 1, 2001 and continuing through the present, the Defendant breached and continued to breach the contract with the Plaintiff by materially altering the agreed

upon terms of the Policy without the Plaintiff's knowledge, consent or authority in its issuance of a Policy which did not conform to the terms of the contract, and which provided substantially less coverage than required by the contract;

33. To date, the Plaintiff has demanded payment from the Defendant for the value of the disability benefit coverage extending to his 65th birthday, but the Defendants have failed and continue to fail to pay same;

34. As a direct and proximate result of the Defendant's breach of contract, the Plaintiff will receive approximately $790,683.28 less in monthly long-term disability payments than he should have received had the Policy conformed to the terms set forth in the Proposal offered to him and accepted by him;

WHEREFORE, the Plaintiff, John L. McGill, hereby demands judgment against the Defendant, Minnesota Mutual Life Insurance Company, Alias, in an amount sufficient to confer jurisdiction upon this Honorable Court, together with interest, costs, and any other relief as this Honorable Court deems meet and just;

COUNT III – FRAUD

35. Paragraphs 1 – 34 are hereby incorporated by reference as if set forth fully herein;

36. The Defendant's conduct from May 12, 1992 up to and including the present, including but not limited to concealment of material facts and information, dissemination of misleading information, and the material alteration of the coverage terms in the Policy, as written, so as not to conform with the terms agreed to and contracted for as stated in the Proposal, without the Plaintiff consent, knowledge or authority, constitute actual or constructive fraud upon the Plaintiff, insofar as the Plaintiff was induced to enter into a contract of disability insurance on the coverage terms stated in the Proposal, was caused to reasonably rely in good faith, to his detriment, that the Policy as written provided the same coverage terms stated in the Proposal, and to cause the premiums to be paid on the Policy;

37. To date, the Plaintiff has demanded payment from the Defendant for the value of the disability benefit coverage extending to his 65th birthday, but the Defendants have failed and continue to fail to pay same;

38. As a direct and proximate result of the Defendant's actual or constructive fraud, the Plaintiff will receive approximately $790,683.28 less in monthly long-term disability payments than he should have received had the Policy conformed to the terms set forth in the Proposal offered to him and accepted by him;

39. In addition to recovering his compensatory damages, the Plaintiff is also entitled to an award of punitive damages against the Defendant by reason of its fraud herein;

WHEREFORE, the Plaintiff, John L. McGill, hereby demands judgment against the Defendant, Minnesota Mutual Life Insurance Company, Alias, in an amount sufficient to confer jurisdiction upon this Honorable Court, together with interest, costs, and any other relief as this Honorable Court deems meet and just;

COUNT IV – BREACH OF FIDUCIARY DUTY

40. Paragraphs 1 – 39 are hereby incorporated by reference as if set forth fully herein;

41. At all times relevant hereto, the Plaintiff entrusted to the Defendant the handling of his disability insurance request and the contract to provide the coverage he accepted in accordance with the Proposal;

42. At all times relevant hereto, the Defendant has been serving as a fiduciary to the Plaintiff with respect to the disability insurance coverage requested by him, offered to him through the Proposal, and accepted by him, the writing and issuance of the Policy, and the disclosure or lack thereof to the Plaintiff of the coverage terms provided in the Policy as written, and other information provided the Plaintiff about the Policy upon which the Defendant intended the Plaintiff to rely;

43. At all times relevant hereto, the Defendant has owed the Plaintiff a fiduciary duty of fair dealing with respect to all material facts and matters in their contract to provide the Plaintiff with disability coverage in conformity with the Proposal;

44. To date, the Defendant, by and through its conduct set forth herein, has breached and continues to breach its fiduciary duty to the Plaintiff;

45. As a direct and proximate result of the Defendant's breach of fiduciary duty, the Plaintiff will receive approximately $790,683.28 less in monthly long-term disability payments than he should have received had the Policy conformed to the terms set forth in the Proposal offered to him and accepted by him;

46. In addition to recovering his compensatory damages, the Plaintiff is also entitled to an award of punitive damages against the Defendant by reason of its breach of fiduciary duty herein;

WHEREFORE, the Plaintiff, John L. McGill, hereby demands judgment against the Defendant, Minnesota Mutual Life Insurance Company, Alias, in an amount sufficient to confer jurisdiction upon this Honorable Court, together with interest, costs, and any other relief as this Honorable Court deems meet and just.

Plaintiff, John L. McGill,
By His Attorneys:

D'AMICO & BURCHFIELD, LLP

Jessica L. Basso, Esq.
536 Atwells Avenue
Providence, Rhode Island 02909
(401) 454-1212
(401) 454-1233 (fax)

The Plaintiff hereby demands a trial by jury as to all issues contained herein.

State of Rhode Island
Providence, SC

I certify that the within Paragraphs are true and accurate to the best of my knowledge.

Verified: ______________
John L. McGill

Subscribed and sworn to before me on this 18 day of ~~October~~ November, 2005:

______________
Notary Public
My Commission Expires: 3/24/09