UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN L. MCGILL,

Plaintiff

C.A. No. 05-0481/S

v.

MINNESOTA MUTUAL LIFE INS. CO.,

Defendant

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT,**
**THE MINNESOTA LIFE INSURANCE COMPANY**[1]

Defendant, the Minnesota Life Insurance Company ("Minnesota Life") moves pursuant to Fed. R. Civ. P. 56(b) and LR Cv 56 for summary judgment dismissing with prejudice all counts against it in plaintiff's complaint.

Defendant files herewith a Statement of Undisputed Facts and a supporting memorandum of law.

/s/ Timothy M. Bliss
Brooks R. Magratten, No. 3585
bmagratten@vetterandwhite.com
Timothy M. Bliss, No. 6228
tbliss@vetterandwhite.com
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

[1] The Minnesota Life Insurance Company is incorrectly designated in the caption as "Minnesota Mutual Life Insurance Company."

HARVEY ♦ PENNINGTON LTD.

Melissa Lang /(TMB)

Melissa Lang, Esq.
1835 Market Street - 29th Floor
Philadelphia, Pennsylvania 19103
(215) 575-4168
(215) 568-1044 FAX

Dated: October 20, 2006

CERTIFICATE OF SERVICE

To:

Alan J. Pierce, Esq.
Hancock & Estabrook, LLP
1500 MONY Tower I
P.O. Box 4976
Syracuse, NY 13221-4976

Jessica Basso, Esq.
D'Amico & Burchfield, LLP
536 Atwells Avenue
Providence, RI 02909

I hereby certify that I electronically filed the within motion on October 20, 2006. The motion is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-listed counsel of record has been effectuated by electronic means.

/s/ Timothy M. Bliss

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN L. MCGILL,

Plaintiff

v.

MINNESOTA MUTUAL LIFE INS. CO.,

Defendant

C.A. No. 05-0481/S

**MEMORANDUM OF LAW OF DEFENDANT,**
**THE MINNESOTA LIFE INSURANCE COMPANY,[1]**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff brought this action seeking to recover against the defendant on claims for misrepresentation, breach of contract, fraud and breach of fiduciary duty with respect to a disability policy issued by defendant and insuring plaintiff. The policy, as issued, has a limited benefit period of five years, and was issued in 1992. Plaintiff became disabled in November, 1995, and pursuant to the terms of the policy, defendant paid benefits for five years, through February 1, 2001. Plaintiff claims that defendant misrepresented the policy to him as providing benefits through age 65, and that he was damaged when defendant ceased paying benefits after the five-year payment period was exhausted.

There are no material facts in dispute in this case, and there are multiple legal defenses that defeat plaintiff's claims as a matter of law. First, ERISA governs this action, and the applicable statute of limitations bars the claim. Although plaintiff contends that ERISA does

[1] The Minnesota Life Insurance Company ("Minnesota Life") is incorrectly designated in the caption as "Minnesota Mutual Life Insurance Company."

not govern the claim because he paid a portion of the premiums for the policy, plaintiff made a judicial admission in prior litigation between the parties to the contrary.

Second, plaintiff is estopped as a matter of law from pursuing this claim because he failed to disclose it in his bankruptcy, filed in 2001 and concluded in 2002.

Third, even if the Court rules that ERISA does not preempt plaintiff's state law claims, the common law of Virginia, the state in which the alleged misrepresentation, fraud, breach of contract and breach of fiduciary duty allegedly occurred in 1992, applies. The applicable Virginia statutes of limitations also bar all of plaintiff's claims, other than the claim for breach of contract. Furthermore, plaintiff voluntarily executed a release in favor of, *inter alia*, defendant in 1995, and Virginia law holds that plaintiff's claim is absolutely barred.

Fourth, Virginia law will not support plaintiff's claim for breach of contract because Virginia does not recognize an insurance proposal to be a contract, and the express language of the policy states that benefits are payable for only five years. Hence, defendant could not have breached the contract because the required benefits were paid.

Because the legal defenses asserted by defendant under ERISA and/or the common law of Virginia absolutely bar plaintiff's claims and there are no material facts in dispute, defendant is entitled to summary judgment and the dismissal of the plaintiff's Complaint with prejudice.

## II. FACTS

Plaintiff brought this, his <u>second</u> action seeking to recover for alleged misrepresentation, breach of contract and breach of fiduciary duties on the same disability insurance policy, in December, 2005, with respect to events that occurred in the Commonwealth of Virginia in 1992. *See* Complaint, Counts I, II, IV.

Plaintiff was an executive officer of the Interflex Group ("Interflex") in 1992. Statement of Undisputed Facts ("SUF") at ¶ 1. In May, 1992, Interflex elected to sponsor a program of "Keyman" disability insurance for its senior executives. SUF at ¶ 2. Interflex worked with a broker, J. Michael Johnson, to have the employer-sponsored coverage issued with Minnesota Life as the underwriter and administrator of the Keyman Disability Insurance Program. SUF at ¶ 3. Coverage was to be provided for the plaintiff, as well as for six other Interflex key executives. *Id.*

Prior to the preparation of applications for coverage for the Interflex "keymen," the broker had prepared proposals for each executive, including the plaintiff. SUF at ¶ 4. The proposal prepared for the plaintiff states specifically on its face "This proposal does not in any way replace the specific coverages provided in the policy. See the policy for details. Both policy benefits and wording may vary . . . ." SUF at ¶ 5. The proposal outlined in general terms that coverage be issued to age sixty-five. *Id.* After the plaintiff's application was analyzed by defendant's underwriter, however, defendant determined that it could not issue the policy as proposed. SUF at ¶ 6. Instead, the policy was issued with a limited five-year benefit period at a higher premium due to plaintiff's medical history and physical condition. *Id.* Correspondence explaining that changes were made to the Policy was sent to the defendant. *Id.*

On the application, which plaintiff acknowledged was accurately prepared, it is designated that mail related to the keyman policy was to be directed to Interflex' offices in Ashland, Virginia. SUF at ¶ 7. The broker, Mr. Johnson, delivered the policy to the plaintiff at Interflex's offices. SUF at ¶ 8. Mr. Johnson explained the policy, as issued, with a five-year limited benefit period, to the plaintiff. *Id.*

Although plaintiff alleges in his Complaint that he did not receive the policy until 1996, he nonetheless admitted at his deposition that he took possession of the policy in October, 1995, when he found it in the office of Eleanor "Micki" Doyle, the wife of the Chairman of Interflex. SUF at ¶ 9. Plaintiff described sneaking through the papers in Mrs. Doyle's office after he realized that he was to be terminated to look for documents to support potential claims against Interflex in shareholder litigation. *Id.*

On November 30, 1995, plaintiff was terminated from his position as President of Interflex. SUF at ¶ 10. Plaintiff executed the Release, expressly releasing Interflex and its agents and administrators, such as the defendant, from any and all claims that plaintiff "has, may have, or may claim to have . . . known or unknown . . . including, but not limited to . . . claims demands or actions arising under . . . the Employee Income Security Act . . . .any right of payment of Disability or any other . . . contractual right of payment . . . or any other . . . contractual right of payment, or any claim for relief on the basis of an alleged tort or breach of contract under the common law of the Commonwealth of Virginia or any other state . . ." SUF at ¶ 11.

After his termination by Interflex, plaintiff filed a claim for disability benefits under the policy on the basis of severe obstructive sleep apnea. SUF at ¶ 12. After filing the claim for disability benefits, plaintiff continued to serve as a consultant for Sun Ribbon, Inc., completed an LLM degree at Temple University, operated his own consulting business, founded his own law firm (once in New York, and later in Rhode Island), operated a real estate holding company, passed the New York State Bar Exam, and served as a public official for the City of Oswego, New York. SUF at ¶ 13.

Prior to the effective date of his termination by Interflex, Interflex paid the premiums for the policy. SUF at ¶ 14. To the extent that plaintiff paid premiums for the policy post termination by Interflex, plaintiff was reimbursed by defendant for those premiums for the policy which he paid in 1996. *Id.* Interflex's former accountant confirmed that Interflex did not issue plaintiff a 1099 form imputing the premiums paid for the policy as income to the plaintiff. SUF at ¶ 15.

In July, 1997, plaintiff brought suit against defendant and the broker in Virginia. SUF at ¶ 16. In the Virginia Complaint, in support of which Plaintiff executed an affidavit attesting to the veracity of the allegations, he alleged that the policy was paid for and sponsored by Interflex. *Id.* That action was concluded by way of demurrer. *Id.*

On February 1, 2001, plaintiff received the last payment of benefits, as the five-year benefit period called for by the policy was exhausted. SUF at ¶ 17. On May 25, 2001, plaintiff filed for bankruptcy in the United States Bankruptcy Court for the Northern District of New York. SUF at ¶ 18. Although plaintiff originally filed for reorganization, the bankruptcy was resolved as a "no asset" Chapter 7, and plaintiff was discharged. SUF at ¶ 19. Plaintiff admitted in his deposition that he failed to schedule his claim against Minnesota Life as an asset in the bankruptcy. *Id.* In December of 2005, after the bankruptcy was safely concluded, plaintiff brought this action. SUF at ¶ 20.

## III. <u>LEGAL ARGUMENT</u>

### A. <u>Summary Judgment is Appropriate</u>

Summary Judgment is appropriate when the moving party demonstrates an absence of any evidence to support the non-moving party's case. Where the non-moving party is unable to come forward with factual evidence on which the jury could find in its favor, the

moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The party opposing a motion for summary judgment must demonstrate facts showing there is a genuine issue for trial, because summary judgment is designed to go beyond the pleadings to assess whether a genuine issue of material fact exists. *Celotex, supra,* 477 U.S. at 323-24. In making its showing, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Kirkpatrick v. AIU Ins. Co.,* 204 F. Supp. 2d 850, 853 (E.D. Pa. 2002), *relying on, Celotex, supra*. The non-moving party must produce more than a mere scintilla of evidence in its favor to withstand summary judgment. *Id., relying on, Anderson, supra.* If the non-moving party fails to create "sufficient disagreement to require submission of the evidence to a jury," the moving party is entitled to judgment as a matter of law. *Id.*

Here, plaintiff has not developed any facts in discovery that defeat the limitations, estoppel and release arguments advanced by the defendant that plaintiff's claims are barred as a matter of law. Accordingly, the entry of summary judgment is here appropriate.

**B. ERISA Governs Plaintiff's Claims.**

The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefits plan." 29 U.S.C. § 1144(a). ERISA expressly preempts "state laws providing alternate enforcement mechanisms for employees to obtain ERISA plan benefits." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995). The scope of ERISA's preemption extends to common law tort, contract and breach of fiduciary

claims. *Elmore v. Kone Mills Corp.*, 23 F.3d 855, 863 (4th Cir. 1994).[2] ERISA defines "employee welfare benefit plan" as follows:

> Any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, [or] disability . . . .

29 U.S.C. § 1002(1).

That the Interflex plan falls within the definition of an "employee benefit plan" is manifested because (1) it is a plan, (2) established and maintained by Interflex, (3) for its "key men", (4) for the purpose of providing disability insurance, (5) to those "key men". *See Madonia v. Blue Cross & Blue Shield of Virginia,* 11 F.3d 444, 446 (4th Cir. 1993). The purchase of insurance by an employer is sufficient to establish an employee benefit plan if the other requirements had been met. *Id.,* at 448.

Plaintiff does not and cannot dispute that the insurance policy at issue in this case is keyman insurance. *See*, *e.g.*, SUF at ¶ 2, 3, 15. Plaintiff is seeking benefits under the plan. *See* Complaint at Counts I - IV. Accordingly, plaintiff's state law tort, contract, and breach of fiduciary claims are preempted by ERISA. *See Elmore*, 23 F.3d at 863.

The First Circuit is in accord with the Fourth Circuit on these issues. It has stated that "no single act itself necessarily constitutes the establishment of the plan, fund or program." *Demars v. Cigna Corp.*, 173 F.3d 443, 446 (1st Cir. 1999) (citing *Belanger v. Wyman-Gordon*

---

[2] The Fourth Circuit's decision in *Coyne & Delany Co. v. Selman*, 98 F.3d 1457 (4th Cir. 1996) does not lead to a different conclusion. In that litigation, the plaintiff was an employer which was neither a beneficiary nor a participant in the ERISA plan. As a result, the employer's common law malpractice action did not seek benefits under the ERISA. Therefore, the court held that the employer's common law tort claim was not "an alternate enforcement mechanism for an employee to obtain ERISA plan benefits" and thus not preempted by ERISA. *Id.* at 1471. Plaintiff in this case is a plan participant seeking benefits under the plan. Therefore, his state common law claims are an attempt to circumvent the remedies afforded under ERISA.

*Co.*, 71 F.3d 451, 455 (1st Cir. 1995)). Although there is no established checklist by which a determination is made as to whether an employer's actions establish an ERISA plan, the First Circuit has noted persuasive authority stating that a benefit plan under ERISA requires only the following constituent parts: (1) a plan, fund or program; (2) established or maintained; (3) by an employer or by an employee organization, or both; (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death [benefits]..... (5) to participants or their beneficiaries. *Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077, 1082 (1st Cir. 1990) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1370 (11th Cir. 1982) (*en banc*)).

More recently, the United States District Court for the District of Massachusetts has held that welfare benefits plans are established under ERISA if, from the surrounding circumstances, a reasonable person can ascertain (1) the intended benefits; (2) the intended beneficiary; (3) the source of financing; and (4) procedures for receiving benefits. See, *Williams v. HealthAlliance Hosps., Inc.*, 135 F. Supp. 2d 106, 110 (D. Mass. 2001). Moreover, in 2004, the same Court stated that where life insurance has been purchased by an employer, that is the defining characteristic of an ERISA employee benefit plan, *i.e.*, it is established or maintained by an employer. See, *Dreznin v. Reliance Std. Life*, 350 F. Supp. 2d 308 (D. Mass. 2004) (citing, *New England Mut. Ins. Co. v. Baig*, 166 F.3d 1 (1st Cir. 1999)).

Thus, the Fourth Circuit and the First Circuit are in substantial accord that the existence of an employee welfare benefit program within the meaning of ERISA is determined from the surrounding circumstances: namely, could a reasonable person ascertain (1) the intended benefits; (2) the intended beneficiary; (3) the source of financing; and (4) the procedures for receiving benefits. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410 (4th Cir. 1993). The mere fact that only a limited number of Interflex employees, *e.g.*, the "keymen," participated

in the coverage underwritten by Minnesota Life does not defeat ERISA governance. See, *DiMaria v. First Unum Life Ins. Co.*, 31 Employee Benefits Cas. 1214, 2003 WL 21018819 (S.D.N.Y. 2003); *Bellisario v. Loanstar Life Ins.*, 871 F. Supp. 374 (C.D. Cal. 1994).

**C. <u>The ERISA Limitations Period Bars Plaintiff's Claims.</u>**

29 U.S.C. § 1113 sets forth the statute of limitations for actions governed by ERISA, as follows:

> § 1113. Limitation of Actions
>
> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –
>
> (1) six years after (A) the date of the last action which constituted part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have secured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Notwithstanding plaintiff's allegation in the Complaint that he did not have possession of the policy until 1996, or his admission that he took possession of the policy from his former employer's office surreptitiously in October, 1995, the Virginia Complaint[3] filed on or about June 23, 1997 pleading an identical cause of action is proof positive that plaintiff had actual knowledge of the alleged breach or violation by Minnesota Life. Accordingly, the

---

[3] The term "Virginia Complaint" refers to the complaint (titled "Motion for Judgment,") filed in the Circuit Court for the City of Richmond, Virginia, in the case captioned, *John L. McGill v. Minnesota Mutual Life Insurance Company, et al.*, at Law No. LC.1593.43, a copy of which is attached to the SUF as Exhibit I.

plaintiff's claims became time barred in 2000, at the latest, five years preceding the initiation of this action.

Here, the filing of the Virginia Complaint by the plaintiff against the defendant manifests actual knowledge of the alleged misfeasance of the defendant such that the three-year limitation period running from the date of "actual knowledge" applies. *J. Geils Band Ben. Plan v. Smith Barney, Inc.*, 76 F.3d 1245, 1254 (1st Cir. 1996). Clearly, the plaintiff possessed "such knowledge as would alert a reasonable [person] to the possibility" of the alleged breach or violation. *Id., quoting, Maggio v. Gerard Freezer & Ice. Co.*, 824 F.2d 123, 128 (1st Cir. 1987) (citing *Cook v. Avien, Inc.*, 573 F.2d 685, 697 (1st Cir. 1978)).

Here, plaintiff's express knowledge of his claim is manifested by the filing of the Virginia Complaint. That plaintiff elected not to pursue the claim further until almost ten years later is inexplicable, except in the context of plaintiff's bankruptcy filing. It is clear that plaintiff sought to protect his claim from becoming an asset of his estate in bankruptcy, and thus potentially subject to distribution to his creditors. Moreover, the bar of the ERISA statute of limitations must not be bent to accommodate plaintiff's shielding of assets from his creditors in default of his obligation of candor towards the bankruptcy tribunal.[4] As the undisputed facts manifest that plaintiff's claim is time barred, by, *inter alia,* 29 U.S.C. § 1113, defendant is entitled to summary judgment.

**D. <u>ERISA Preempts Plaintiff's State Law Claims.</u>**

It is well-settled, regardless of which Circuit's decisional authority governs this cause of action brought in the District of Rhode Island relating to events which occurred in the

[4] That plaintiff is a member of the bars of Rhode Island, Delaware, New York and Massachusetts, and thus governed by Rule of Professional Conduct 3.3 mandating candor towards all tribunals heightens the importance of the firm application of the applicable statute of limitations to bar plaintiff's claim, so as not to permit plaintiff to profit in any respect by his patent abandonment of his professional responsibilities to the Court.

District of Virginia, ERISA preempts state law causes of action, such as those pursued by plaintiff here. *Morais v. Central. Bev. Corp. Union Employees' Supplemental Retirement Plan,* 167 F.3d 709, 711-12 (1st Cir. 1999), *relying on,* 29 U.S.C. §1144(a); *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 138-39, (1990); *Metropolitan Life In. Co. v. Pettit,* 164 F.3d 857, 861 (4th Cir. 1998). Such pre-emption applies to all of plaintiff's state law causes of action, as well as to his demand for a jury trial.

**1. The Claim for Breach of Contract**

Courts have routinely held that state law claims for breach of contract are preempted by ERISA where the contract in question is part of an employee welfare benefit plan. *See, e.g.*, *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129 (7th Cir. 1992); *Boren v. N.L. Industries, Inc.,* 889 F.2d 1463 (5th Cir. 1989); *Morris v. Highmark Life Ins. Co.*, 255 F. Supp. 2d 16 (D.R.I. 2003); *Andrews-Clarke v. Travelers Ins. Co.,* 984 F. Supp. 49 (D. Mass. 1997).

**2. The Claim for Breach of Fiduciary Duty**

To the extent that a common law breach of fiduciary duty claim is asserted, it is preempted. *See Nash v. Trustees of Boston Univ.*, 946 F.2d 960, 964 n.8 (1st Cir. 1991), (ERISA preempts state law claims for breach of fiduciary duties arising from improper processing of a claim under a plan); *Cromwell v. Equicor-Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir. 1991) (ERISA preempts claim for breach of good faith); *Davidian v. Southern California Meat Cutters Union & Food Employees Benefit Fund*, 859 F.2d 134 (9th Cir.1988) (ERISA preempts claim for breach of fiduciary duty).

A breach of fiduciary duty claim under 29 U.S.C. § 1132 may only be brought (1) on behalf of the Plan or (2) when equitable relief is sought. *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 109 (1st Cir. 2002). Where adequate relief is available in the form of a

claim for benefits, there is no claim for breach of fiduciary duty. *Id.* It is not an appropriate cause of action for a claimant, such as the plaintiff here, who seeks Plan benefits. *Varity Corp. v. Howe*, 516 U.S. 489 (1996).

**3. The Claims for Fraud/Misrepresentation**

The First Circuit held that state law based claims for fraud and misrepresentation arising from alleged misrepresentation of the length of time for which plan benefits are payable are preempted by ERISA. *Degnan v. Publicker Indus., Inc.* 83 F.3d 27, 28-29 (1st Cir. 1996). Although *Degnan* is factually distinguishable from the plaintiff's claim against defendant, the holding is nonetheless applicable to preclude plaintiff from prevailing on the tort claims based on the defendant's alleged misrepresentation to the plaintiff of the period of time for which benefits would be payable pursuant to the terms of the policy.

**4. The Jury Trial Demand**

In the event that the Court denies defendant's motion for summary judgment, plaintiff's jury trial demand should be stricken. A majority of circuit courts have held that a jury trial is not available for benefit claims under ERISA because proceedings to determine rights under employee benefit plans are equitable in character and thus a matter for a judge, not a jury., to decide. *See, e.g., Recupero v. New England Tel. & Tel. Co.*, 118 F.3d 820, 831-32 (1st Cir. 1997); *Sullivan v. LTV Aerospace and Defense Co.,* 82 F.3d 1251, 1258 (2nd Cir.1996) *Borst v. Chevron Corp.*, 36 F.3d 1308, 1323-24 (5th Cir.1994) ; *Spinelli v. Gaughan*, 12 F.3d 853 (9th Cir. 1993); *Biggers v. Wittek Industries, Inc.*, 4 F.3d 291 (4th Cir. 1993); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3rd Cir.1990); *Blake v. Unionmutual Stock Life Ins. Co. of Am.*, 906 F.2d 1525 (11th Cir. 1990); *Cox v. Keystone Carbon Co.*, 894 F.2d 647 (3rd Cir.), *cert. denied*, 498

U.S. 811 (1990); *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir. 1988), *cert. denied*, 488 U.S. 826 (1988); *In Re Vorpahl*, 695 F.2d 318 (8th Cir. 1982).

Accordingly, District Courts in this Circuit have held routinely that jury trials are not available in ERISA cases. *See Dudley Supermarket, Inc. v. TransAmerica Life Ins. & Ann. Co.*, 188 F. Supp. 2d 23, 24 (D. Mass. 2002); *Canis v. Coca-Cola Enterprises, Inc.*, 49 F. Supp. 2d 73, 80 n.3 (D.R.I. 1999); *Gentile v. John Hancock Mut. Life Ins. Co.*, 951 F. Supp. 284 (D.Mass.1997); *Charlton Mem'l Hosp. v. Foxboro Co.*, 818 F. Supp. 456, (D. Mass. 1993); *Kelly v. Blue Cross & Blue Shield of Rhode Island*, 814 F. Supp. 220, 222 (D.R.I. 1993). As plaintiff has no right to a trial by jury on his claims, and in view of the well-developed record in discovery and the absence of any dispute of material facts, the principle of judicial economy mitigates in favor of this litigation being resolved by the court now, at the summary judgment phase, rather than proceeding to a bench trial.

**E. <u>The Doctrine of Estoppel Bars Plaintiff's Claims.</u>**

Where, as here, a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, that party may not thereafter, simply because his interests have changed, assume a contrary position. *Davis v. Wakelee*, 156 U.S. 680 (1895). Several factors determine where estoppel is applicable. First, a party's position must be clearly inconsistent with his earlier position. Second, a Court must inquire whether the party has succeeded in persuading a Court to accept his or her earlier position. Third, the Court must determine where the party is seeking to assert an inconsistent position from which the party would derive an unfair advantage if not estopped. *Zedner v. United States*, 547 U.S. __, 126 S.Ct. 1976 (2006) (citing *New Hampshire v. Maine*, 532 U.S. 732, 750-51 (2000)).

In the First Circuit, judicial estoppel takes effect when it is shown that the parties sought to be estopped "succeeded previously with a position directly inconsistent with the one he

currently espouse[s]." *Fleet Nat'l. Bank v. Gray* (*In Re: Bankvist Capital Corp.*), 375 F.3d 51, 60 (1st Cir. 2004) (citing, *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 13 (1st Cir. 1999)); *New Hampshire*, 532 U.S. at 750-51. To determine whether the party "succeeded" in a prior proceeding such that judicial estoppel would apply, the courts looked to whether the prior forum "accepted the legal or factual assertion alleged to be at odds with the position advanced in the current forum . . . ." *Id.* (*citing Gens v. Resolution Trust Corp.* (*In Re: Gens*), 112 F.3d 569, 572-73 (1st Cir. 1997)).

In this case, plaintiff admits that he did not disclose his claim against defendant as an asset of his estate in bankruptcy. Further, the record in plaintiff's two bankruptcy proceedings evidences that plaintiff successfully protected himself and his assets from his creditors.

The doctrine of judicial estoppel has been used to preclude debtors who did not disclose a cause of action as an asset of the estate in bankruptcy from continuing or pursuing their undisclosed cause of action after the bankruptcy was concluded. See, *Welsh v. Quabbin Timber*, 199 B.R. 224 (D. Mass. 1996) (holding that a cause of action against bank not disclosed during bankruptcy could not be pursued by debtor under principle of judicial estoppel); See also, *In re Pryor,* 2006 WL 1266531 (Bankr. N.D. Miss. 2006) (holding that judicial estoppel precluded a Chapter 7 debtor from continuing her pre-petition cause of action against her insurer where she had several opportunities to disclose the cause of action in her bankruptcy); *In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir. 2004) (holding that judicial estoppel precludes a former debtor from pursuing a viable $2 million personal injury claim) (citing *In re Walker,* 323 B.R. 188 (Bankr. S.D. Tex. 2005) (invoking judicial estoppel to bar the debtor from pursuing an unscheduled personal injury cause of action)).

Here, all elements of judicial estoppel are met. Plaintiff took a contrary position in the bankruptcy because he did not schedule his claim against defendant in the bankruptcy. By omitting the claim, plaintiff made a representation under oath to the bankruptcy court that the claim was not an asset of the estate, *i.e.,* that it was not a viable claim. Similarly, the second element is satisfied as the bankruptcy court accepted plaintiff's position when it signed an Order discharging plaintiff. The final element—that of unfair advantage—is also satisfied. The failure to disclose is only excused where it can be shown that the debtor either lacks knowledge of the claim, or has no motive for the concealment. *Superior Crewboats*, 374 F.3d at 330; *In re Walker*, 323 B.R. at 188. Given the filing of the Virginia Complaint, plaintiff clearly had knowledge of the facts of the claim and the legal theories of recovery. Further, plaintiff had a motive to conceal the claim from the bankruptcy court, to preserve the claim for his personal benefit, and shield the asset from his creditors.

As the applicable decisional authority expressly forbids plaintiff from proceeding with, much less prevailing on, a claim of which he indisputably had knowledge prior to proceeding before the bankruptcy court, and which he indisputably did not disclose to the bankruptcy court, summary judgment must be entered in favor of defendant pursuant to the doctrine of estoppel.

**F. <u>Virginia Law Bars Plaintiff's Claims.</u>**

**1. The Release Bars Plaintiff's Claim[5]**

Virginia law is well-settled concerning the interpretation and construction of releases. Like the terms of any contract, the scope and meaning of a release agreement is ordinarily governed by the intention of the parties, as expressed in the documents they have executed. *Berczek v. Erie Ins. Co. Group*, 529 S.E.2d 89, 91 (Va. 2000) (citing *Richfood, Inc. v. Jennings*, 499 S.E.2d 272, 275 (Va.1998)). When the contract is lawful, and the release language is free from ambiguity, the agreement furnishes the law that governs the parties. *Id., citing First Sec. Fed. Sav. Bank, Inc. v. McQuilken*, 480 S.E.2d 485, 487 (Va. 1997); *Russell Co., Inc. v. Carroll*, 74 S.E.2d 685, 688 (Va. 1953).

Here, the release language states expressly:

> "[plaintiff] irrevocably and unconditionally releases and discharges [Interflex]....any anyone else acting by, through, under or in concert with [Interflex] from any and all liability, claims or demands that he has or may have...including, but not limited to any right of payment for disability....".

Release at ¶ 7.

The claims released are those which plaintiff:

> ". . . has, may have, or may claim to have . . . known or unknown . . . including, but not limited to . . . claims demands or actions

[5] In *Unum Life Ins. Co. of America v. Cappello,* 278 F. Supp.2d 228 (D.R.I. 2003), this Honorable Court examined the issue of whether a release signed by a terminated employee barred that employee's long term disability benefit claim. In that case, this Court found that federal common law, rather than state law, applied to determine whether the release barred the former employee's claim. In applying federal common law, the Court enumerated several factors that a court may consider when determining if a waiver of ERISA benefits has been knowing and voluntary, namely (1) the plaintiff's education, business experience, and sophistication; (2) the parties' respective roles in deciding the final terms of the arrangement; (3) the agreement's clarity; (4) the amount of time available to the employee to study the agreement before acting on it; (5) whether the employee had independent advice-such as the advice of counsel-when she signed the agreement; and (6) the nature of the consideration tendered in exchange for the waiver. <u>Cappello</u> at 234. Respectfully, defendant submits that the Court will not need to engage in any analysis of the factors set forth in <u>Cappello</u> in this case if it is governed by ERISA because plaintiff's claims will be time barred. Even if the Court applies the <u>Cappello</u> analysis, however, the Interflex/McGill release bars plaintiff's claims. Accordingly, the discussion of Virginia law governing release is advanced only in the event ERISA does not expressly govern plaintiff's claims in this action.

> arising under . . . the Employee Income Security Act . . . .any right of payment of Disability or any other . . . contractual right of payment . . . or any other . . . contractual right of payment, or any claim for relief on the basis of an alleged tort or breach of contract under the common law of the Commonwealth of Virginia or any other state. . . .

*Id.*

This language is unambiguous insofar as it releases parties acting with and/or for Interflex, such as defendant in its capacity as the administrator of the Interflex Keyman Disability Insurance Program, from liability for payment for disability benefits. Moreover, the term "has or may have" do not put a temporal limitation on the scope of the release. There is no evidence that the parties intended that the releasing language operate differently and, accordingly, it is indisputable that the releasing language in the agreement is effective and binding upon plaintiff to bar the claims against defendant. Accordingly, defendant is entitled to summary judgment, and dismissal of the Complaint, with prejudice.

**2. The Bar of the Statute of Limitations**

Virginia law time bars plaintiff's tort claims. Title 8.01 of the Virginia Code provides that every action for which a limitation period is prescribed by law must be commenced within the period prescribed, unless otherwise specifically provided in the code. Virginia law states that a "personal action" includes an action where a judgment for money is sought, whether for damages to person or property. *See* Section 8.01-228 Scope of Limitations; "Personal Action" Defined. The express statute of limitations for damages resulting from fraud and misrepresentation is two years. Section 8.01-243.

Plaintiff's cause of action accrued once defendant ceased paying benefits to the plaintiff on February 1, 2001. Despite the two-year statute of limitations imposed under Virginia

law, plaintiff delayed brining suit in this matter until 2005. Accordingly, plaintiff's claims for fraud and misrepresentation are time barred, and defendant is entitled to summary judgment on these claims.

### 3. The Claim for Breach of Fiduciary Duty

The Supreme Court of Virginia has held that the relationship "which exists between and insurer and insured is not a fiduciary relationship". *State Farm Mutual Auto Ins. Co. v. Floyd*, 366 S.E.2d 93, 97 (Va. 1988). The Court explained:

> An insurer has the right to protect its own interests along with that of the insured. It is that factor which prevents the development of a fiduciary relationship between insurer and insured. A fiduciary owes total fidelity to the interest of its principal. While the relationship continues, he may engage in no self-dealing which may have any adverse effect on the interest of his principal. That duty of unswerving loyalty is inconsistent with the right of an insurer, pursuant to a contract, to protect its own interests, along with that of its insured.

*Id.* (citations omitted).

Therefore, under the law of the state of Virginia, there is no fiduciary relationship between the plaintiff and defendant from which an action for breach of fiduciary duty will lie. Accordingly, defendant is entitled to summary judgment.

### 4. The Claim for Breach of Contract

Plaintiff claims that the insurance proposal was an unconditional offer by defendant to provide plaintiff with a disability policy having a benefit through age 65. Plaintiff claims that he accepted such an offer, and that the proposal and the application constituted a completed contract. Virginia law does not support plaintiff's position in this regard.

First, the terms of the proposal do not memorialize the contract on which plaintiff seeks to recover. There is no guarantee set forth in the proposal that the benefit period of any policy that might be issued to plaintiff would extend through age 65. In the description of

defendant's disability products, no express benefit period is stated. The document refers to "the length of your benefit period", without defining such term. The possibility of lifetime benefits is mentioned. It also mentions that some of defendant's products may include an inflation protection agreement providing for increases during disability even "beyond age 65." But most importantly, the proposal states not less than five times that it "This proposal does not in any way replace the specific coverages provided in the policy. See the policy for details. Both policy benefits and wording may vary . . . ." *See* Proposal.[6]

Virginia law is consistent that a proposed insured's completion of an application does not, in and of itself, create or impose any obligation of an insurance company. In *People's Life Ins. Co. v. Parker*, 20 S.E.2d 485 (Va. 1942), the proposed insured signed an application for life insurance which provided, in pertinent part:

> I further agree that no obligation shall exist against [People's Life] on account of this application, although I may have paid premiums thereon, unless [People's Life] shall issue a policy in pursuance thereof and the same is delivered to me.

*Id.* at 486.

A month's premium was paid in advance and a receipt was given. *Id.* The day after the application should have been received at People's office, the proposed insured was killed. *Id.* No policy was ever issued. *Id.* Nevertheless, the beneficiary claimed the agent had said that the insurance would be an immediate benefit and in effect upon the payment of the first month's premium. *Id.* The Supreme Court of Virginia rejected this argument:

> The plain, simple, and unambiguous language of the application and the terms of the receipt negat[e] any apparent or ostensible authority in [the agent] to make an oral contract of insurance binding his company. Both put [the proposed insured] on notice that he was not protected unless and until a policy of insurance was issued and delivered to him.

[6] A copy of the Proposal is attached to the SUF as Exhibit C.

*Id.*

As for the application, the Court noted:

> The application was merely an *ex parte* offer or proposal. It did not become a part of an insurance contract or a restriction therein since no contract based thereon was entered into by the Company. It related only how and when a contract might issue. It was an offer to purchase a contract of insurance, not an insurance contract.

*Id. See also*, *Hayes v. Durham Life Ins. Co.*, 96 S.E.2d 109, 111 (1957) (holding that the application for insurance is a mere proposal for a contract on the part of the applicant). It is one of two prerequisites in the creation of a contract, the other consisting of the acceptance of the offer. No contractual relationship exists between the parties until acceptance by the insurer, and the application may be withdrawn at any time by the applicant before it is definitively accepted).

In the present case, plaintiff's execution of the application could not, as a matter of law, create a "completed contract" for insurance between plaintiff and defendant. The application was an offer to purchase contract of insurance and not an insurance contract. As in both *Parker* and *Hayes*, the application clearly provided:

> The insurance applied for will not take effect unless the policy is issued and delivered and the first full premium is paid while the health of the Proposed Insured remains as stated in Part 1 and Part 2 of the application.

*See* Application[7], Part 3, ¶ 1.

By signing the application, Part 2, plaintiff agreed that the statement made "will become part of this application and any policy issued on it." By signing the application, Part 3, plaintiff understood that information concerning his medical history would be "used for the purpose of determining eligibility for insurance." The fact that there was no obligation on the part of defendant unless and until the policy was issued was further emphasized in the

application referencing plaintiff as the "proposed insured." Finally, as a matter of state law, the proposal and application could not have constituted a "completed contract" because neither contains the mandatory provisions of required disability policies. See, *e.g.* Va. Code §§ 38.2-3500 through 38.2-3513.[8]

As the proposal on which plaintiff seeks to recover on the claim for breach of contract is not a contract as contemplated by Virginia law, the defendant is entitled to summary judgment. As plaintiff cannot identify any provision of the integrated disability policy which defendant breached, and, in fact, plaintiff acknowledges that the full five years of benefits payable under the contract were in fact paid, plaintiff cannot recover against defendant on a claim for breach of the one contract to which plaintiff and defendant are parties. Accordingly, defendant is entitled to summary judgment and dismissal of the plaintiff's Complaint with prejudice.

## IV. CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment should be granted, and plaintiff's Complaint dismissed with prejudice.

---

[7] A copy of the Application is attached to the SUF as Exhibit F.

[8] Plaintiff's allegations that the proposal and the signing of the application constitute a "completed contract" with defendant flies in the face of common sense. Why would an insurer agree to issue a disability policy to an individual without having had an opportunity to gather and review information about the individual's health, lifestyle on an application? *Cf., Inter-Ocean Ins. Co. v. Hark Raider*, 67 S.E.2d 894, 897 (Va.1951). Moreover, if, as alleged, plaintiff had a "completed contract" with defendant as of the date of the application, in May, 1992, why did he consent to an increase in premium?

/s/ Timothy M. Bliss
Brooks R. Magratten, No. 3585
bmagratten@vetterandwhite.com
Timothy M. Bliss, No. 6228
tbliss@vetterandwhite.com
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

HARVEY ♦ PENNINGTON LTD.

Melissa Lang /TMB
Melissa Lang, Esq.
1835 Market Street - 29th Floor
Philadelphia, Pennsylvania 19103
(215) 575-4168
(215) 568-1044 FAX

Dated: October 20, 2006

CERTIFICATE OF SERVICE

To:

Alan J. Pierce, Esq.
Hancock & Estabrook, LLP
1500 MONY Tower I
P.O. Box 4976
Syracuse, NY 13221-4976

Jessica Basso, Esq.
D'Amico & Burchfield, LLP
536 Atwells Avenue
Providence, RI 02909

I hereby certify that I electronically filed the within memorandum on October 20, 2006. The memorandum is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-listed counsel of record has been effectuated by electronic means.

/s/ Timothy M. Bliss