UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN L. MCGILL | |
| Plaintiff, | CIVIL ACTION |
| v. | |
| MINNESOTA MUTUAL LIFE INS. CO., | |
| Defendant. | No: 05-0481/S |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. PRELIMINARY STATEMENT

Although plaintiff has done a yeoman's job in attempting to muddy the record with a multitude of irrelevant facts in an effort to create an issue for trial, a critical review of the issues, the facts, and the applicable law manifest that there is no material issue for trial, and the defendant is entitled to judgment as a matter of law. The brobdinagian record which plaintiff put before the Court does not disguise the material undisputed facts which support the defendant's position. These are (1) regardless of whether and/or how plaintiff obtained a copy of the disability policy at issue, it is indisputable that he had it in his possession and was aware of the five year benefit provision in 1997 when he first filed suit on his claims against defendant in Virginia; (2) that the policy was sponsored and paid for by the plaintiff's former employer, as a program of supplemental disability insurance for its "key men", thus subjecting this dispute to ERISA law; (3) plaintiff failed to meet his duty to schedule the claim against Minnesota Life as property claimed to be exempt in his bankruptcy; and (4) the only

legally recognized contract for which plaintiff might pursue a claim for breach of contract is the fully integrated disability policy itself. Applying the applicable law to these undisputed facts, plaintiff has no viable cause of action against defendant, and summary judgment should be granted.

Although plaintiff disputes the applicability of ERISA on the most tenuous of legal grounds, seeks to evade the consequences of his misconduct in the bankruptcy as justifiable reliance upon counsel and the Trustee, plaintiff nonetheless concedes that, these issues aside, the only claim on which he might be able to recover against defendant is for a breach of contract under Virginia law. See, Memorandum of Law of Plaintiff, John J. McGill in Opposition to Defendant's Motion for Summary Judgment, at page 26 ("McGill concedes that with the exception of his claim for breach of contract, the remaining claims are barred by the applicable statutes of limitations under Virginia law"). Given plaintiff's concession in this regard, defendant will primarily address this issue under Virginia law, as Virginia law fully supports defendant's position that it is entitled to summary judgment.

## II. LEGAL ARGUMENT

### A. The Claim for Breach of Contract Under Virginia Law

Plaintiff's position is that certain language in the application for the policy at issue constitutes a contract between himself and defendant because "....the application itself spoke to 'corrections or additions' to the terms of the policy as set forth in the application....". Plaintiff's Memorandum of Law at page 27. It is telling that plaintiff cites to not one single Virginia authority in support of this position. That is because Virginia law absolutely rejects plaintiff's contention that the completion of an application for insurance creates a contract, an action for breach of which will lie.

It is well settled Virginia law that an application for insurance is merely an offer to enter into a contract. The insurance policy is the contract between the parties. *Smith v. Colonial Insurance Company of California* 515 S.E.2d 775, 777, 258 Va. 30, 33 (1999). An application standing alone does not create a contract of insurance and an insured cannot rely on an agent's assurances to bind an insurance carrier to contract obligations separate and apart from the covenants bound in an issued policy. *Connolly v. Prudential Ins. Co.*, 610 F.2d 1215, 1218-19 (4th Cir. 1979).

Plaintiff seeks to rely on alleged oral assurances purportedly made by the producer for the policy, J. Michael Johnson[1], that plaintiff would receive a policy providing more than five years of benefits in the event of disability, to alter the material terms of the policy which was in fact issued with a limited five year benefit. See, plaintiff's Memorandum of Law at page 6. However, Virginia law does not permit oral modification of an unambiguous written contract. *Smith, supra,* at 515 S.E.2d 777, *relying on, Amos v. Coffey*, 228 Va.88, 91- 92, 320 S.E.2d 335, 337 (1984) (quoting *Godwin v. Kerns*, 178 Va. 447, 451 17 S.E. 410, 412 (1941): "in a controversy between two parties to a contract, parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to or explain the terms of a complete, unambiguous, unconditional, written instrument"). As plaintiff does not assert that the written contract of insurance itself is ambiguous in any respect, the parol evidence rule applies to preclude plaintiff from seeking to recover on a claim for breach of contract relating to oral statements allegedly made by Mr. Johnson. Moreover, the disability

[1] Referred to in plaintiff's Memorandum of Law as "E. Michael Johnson", *passim*.

policy at issue is fully integrated, as it provides, in relevant part, as follows:

> <u>**General Information**</u>
>
> **What is your agreement with us?**
>
> This Policy and the copy of your application attached to it contain the entire contract between you and us.
>
> . . . . . . . . . . . . . .
>
> No change or waiver of any of the provisions of this policy will be valid unless made in writing by us and signed by our president, a vice president, our secretary or an assistant secretary. No agent or other person has the authority to change or waive any provision of this policy.

Policy, at page 8, Exhibit "D" to the Motion for Summary Judgment.

Pursuant to *Coffey, supra*, where, as here, the parties set out the terms of their agreement in a clear and explicit writing, then such writing is the sole memorialization of the contract, and the sole evidence of the agreement. *Coffey, supra*, at 320 S.E.2d 337, *relying on, Durham v. Pool Equipment Co.*, 205 Va. 441, 446, 138 S.E. 55, 59 (1964); *accord, Renner Plumbing*, 225 Va. at 515, 303 S.E.2d at 898. Hence, plaintiff's contention that the application, together with the purported verbal representations made by the producer, Mr. Johnson, created a recognized and enforceable contract under Virginia law such that he is entitled to a trial by jury on the issue of whether such alleged contract was breached fails, and defendant is entitled to summary judgment.

**B. <u>Plaintiff's Misconduct In His Prior Bankruptcy Estopps Him From Recovering on the Claim Brought Before This Court</u>**

Plaintiff asserts that his claims in this action are not estopped by his misconduct in his prior bankruptcy on the basis of the alleged incompetence of his bankruptcy counsel, and the rather preposterous assertion that the Trustee in bankruptcy willfully violated the United States Bankruptcy Code by counseling the plaintiff that he

was not obliged to schedule his claim against Minnesota Life in his bankruptcy because the property is exempt from recovery by his creditors under both New York law and the bankruptcy code. Plaintiff's Memorandum of Law at page 24.

Regardless of what plaintiff contends he was advised either by counsel or by the Trustee, the law on this issue is clear. Debtors have an affirmative obligation to report any interest held in an asset, even if it is believed that the asset is worthless or unavailable to the bankruptcy estate; this is true even when debtors claim to have been informed by counsel that certain assets are not part of the bankruptcy estate. *See, Walsh v. Helsel (In Re: Helsel)*, 326 B.R. 591, 600 (W.D.Pa. 2005) (*citing Matter of Yonikis*, 974 F.2d 901, 904 (7th Cir. 1992) revoking a debtor's discharge for failure to identify a personal injury settlement even though the debtor testified that his workers' compensation counsel advised him that such funds were exempt from bankruptcy).

If a debtor conceals or fails to disclose an asset of the estate, the debtor may be barred from claiming an exemption to that property later on, even if the exemption would have been allowed, had it been properly scheduled and then exempted. *Id. (citing In Re: Doan*, 672 F.2d 831, 833 (11th Cir. 1982). A debtor may not first attempt to hide an asset, and then, after he or she gets caught, seek to retain it for his or her own benefit by trying to exempt it. If an exemption in an asset is appropriate, the debtor should have disclosed the asset and exempted it at the outset of the case. *Helsel, supra,* 326 B.R. at 602. "Exempting the property is not a game of hide and seek, and the initial burden falls upon the debtor to particularize [his] or [her] exemptions in order to permit the trustee to ascertain, without any further substantial inquiry, those properties which a debtor believes to be exempt from distribution to creditors". *In Re: de Kleinman,*

172 B.R. 764, 770 (Bankr.S.D.N.Y. 1994) (*citing In Re: Edmunds*, 27 Bankr. 468, 469 (Bankr. M.D. Tenn. 1983) (internal quotations omitted).

Although plaintiff cites to some bankruptcy authority in support of his position, review of this authority finds that it is inapposite. Plaintiff cites to the opinion in *In re Miller*, 167 B.R. 782 (Bankr. S.D.N.Y. 1994) for the proposition that under both federal and New York law exemption statutes are liberally interpreted in favor of debtors. The opinion does so state. However, it so states in the context of reciting the mandates of the bankruptcy code that "the debtors shall file a list of property that the debtor claims as exempt under subsection (b) of this section……Unless a party in interests objects, the property claimed as exempt on such list is exempt. 11 U.S.C. § 522(1)." Thus, the bankruptcy code requires the debtor to disclose all interests in property in the bankruptcy so that creditors may object, and the Court may make the determination as to whether a valid exemption exists. Plaintiff cannot, as he tries to here, make his own determination that the property is exempt, to justify the failure to disclose the asset, and thus preclude the claim of exemption from being subject to objection by creditors. Likewise, in *Miller, supra*, the Court noted Article 10-A of the New York Debtor and Creditor law which establishes personal bankruptcy exemptions as providing that "an individual debtor domiciled in [New York] <u>may</u> exempt from the property of the estate……". (emphasis added). Accordingly, the New York Debtor and Creditor law likewise makes exemption conditional by the use of the word "may", thus mandating that property sought to be exempted be disclosed to creditors in the bankruptcy.

Plaintiff cites the case of *In Re Rufo,* 261 B.R. 580 (Bankr. E.D.N.Y.) for the proposition that a right to receive benefits is exempt from the estate in bankruptcy.

Although the *Rufo* Court does address that issue, it does so with regard to Section 522 of the Bankruptcy Code, concerning what property may be claimed as exempt. However, in the context of the opinion, the issue of exemption is one for the Court to determine once the asset has been disclosed. The opinion does not sanction bankruptcy fraud, where a debtor elects not to disclose property so as to protect it from any objection which may be raised by creditors to a claim that the property is exempt.

Plaintiff cites to the opinion in *In re Panza*, 219 B.R. 95 (Bankr. W.D.Pa. 1998) for the proposition that an exemption for a right to receive benefits is not applied to funds set aside prior to commencement of the bankruptcy. Once again, although the Court in *Panza, supra*, does address the right to receive benefits under a deferred compensation plan, the Court dealt with a claim of exemption which was properly disclosed in the bankruptcy, and came to the conclusion that the claimed exemption was invalid. Hence, P*anza* does not support plaintiff's position that he is not estopped from pursuing the claim against the defendant in this litigation by his misconduct in his prior bankruptcy.

*In Re Michael*, 262 B.R. 296 (Bankr. M.D.J. 2001), cited by plaintiff for the proposition that the right to receive disability benefits is exempt, is also distinguishable as the Court addressed the issue of exemption where the claim for disability benefits was property disclosed by the debtor in the bankruptcy. Nonetheless, the *Michael* Court came to the conclusion that the exemption was unavailable to the debtor. *Id.*

All authority cited by both plaintiff and defendant in addressing the issue of estoppel holds in favor of the defendant's position that plaintiff's prior misconduct in

the bankruptcy estops him from pursuing his claim against the defendant. Therefore, the defendant is entitled to judgment as a matter of law, and dismissal of plaintiff's Complaint.

### C. The Applicability of ERISA

Plaintiff spends the most significant portion of his argument and creation of non-material disputed facts to attack the defendant's contention that plaintiff's claim is governed by ERISA, and thus barred by the ERISA statute of limitations. However, many of the factual points raised by plaintiff lead inexorably to the conclusion that the key man disability insurance program sponsored by plaintiff's former employer, Interflex, is properly governed by ERISA and, as plaintiff concedes, the statute of limitations on the claim has expired.[2] These points are as follows, and are mentioned in the Order in which they appear in plaintiff's brief:

1. Interflex remitted a check to [defendant] and Johnson in payment of the first month's premium due under the policy as reflected in the application. McGill Declaration at paragraph 9; Exhibit "F" (plaintiff's Memorandum of Law at page 4);

2. [Interflex] also offered "key man" [long term disability] which each executive was responsible for paying except for the [plaintiff]. Because he was the highest ranking, Interflex offered to also pay for his key-man [long term disability] through [defendant]. [Interflex] offered the "key-man" as the "company [long term disability] maxed out at $2,500.00 per month. ........The [plaintiff's] premiums were

---

2 In his brief, plaintiff states "McGill concedes that **IF** his claims in this action are governed by ERISA [defendant's] Motion for Summary Judgment should be granted because the claims presented here would be barred by the ERISA statute of limitations and would be preempted by ERISA". Plaintiff's Memorandum of Law at page 19 (emphasis in original).

paid from the corp........ Plaintiff's Memorandum of Law at page 13, quoting pages 15 to 19 of defendant's Claim Memoranda.

3. The disability insurance was a "big deal" [at Interflex] so they discussed both group coverage and individual policies for [plaintiff] and some of the key people at Interflex. Plaintiff's Memorandum of Law at page 16, quoting deposition testimony of J. Michael Johnson.

These facts, on which plaintiff relies, are all indicia of an employer sponsored plan of insurance governed by ERISA. Plaintiff makes much of the fact that the policy, as issued, was an individual product, rather than a group product. However, the opinion on which plaintiff relies to support his proposition that ERISA does not govern this policy, *Demars v. Cigna Corp.*, 173 F.3d 443 (1st Cir. 1999), specifically cites to the fact that an individual, rather than a group insurance product, can be governed by ERISA. Moreover, *Demars, supra,* is so factually inapposite as to negate its value as precedent to support plaintiff's position that ERISA does not govern this policy. In *Demars*, an insured who had obtained an individual long term disability insurance policy through exercise of conversion rights after termination of employment brought an action against the insurer asserting a claim under ERISA. The Court held that a conversion policy is not an employee welfare benefit plan, and thus not subject to ERISA. In *Demars*, the plaintiff voluntarily left employment with the employer who provided a group disability policy. Upon separation of employment, she elected to convert the group coverage to an individual policy sponsored by the same insurer. Three years after the conversion, plaintiff filed a claim for disability benefits. The dispute arose four years thereafter, regarding the insurer's recapture of an overpayment of benefits. 173 F.3d at

444. The Court addressed the issue of whether the conversion policy was sufficiently connected to the underlying employer's plan long after the insured's separation from employment. *Id.* at 445. By contrast, here, the claim for benefits under the key man disability insurance policy sponsored by and paid for by plaintiff's employer was made virtually simultaneously with plaintiff's involuntary termination from employment by Interflex.

In addressing whether the *Demars* plaintiff's claim was sufficiently connected to the underlying ERISA plan, the Court made the following analysis:

> The statute defines an "employee welfare benefit plan" the type of ERISA plan at issue here. (*See*, 29 U.S.C. §1002(3)) as:
>
> > Any plan, fund or program which was heretofore or is hereafter established or maintained by an employer…..for the purposes of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,…..benefits in the event of sickness, accident, disability, death or unemployment.
>
> 29 U.S.C. § 1002(1).
>
> This nearly tautological definition offers little guidance. The key phrase for our present purposes is "established or maintained by an employer". …………"[N]o single act in itself necessarily constitutes the establishment of a plan, fund or program". *Donovan v. Dillingham*, 688 F.2d 13 67, 1373 (11th Cir. 1982) (*en banc*), *quoted in Belanger v. Wyman-Gordon Co.*, 71 F.3d 451, 455 (1st Cir. 1995), and [t]here is no authorative check list that can be consulted to determine whether an employer's action establish an ERISA plan. *Belinger*, 71 F.3d at 455.
>
> *Id.*, at 445-446.

The facts admitted by the plaintiff support the conclusion that the key man disability insurance program sponsored by the former employer, Interflex, is governed by

ERISA. First, plaintiff admits that he was brought into contact with Mr. Johnson by his employer because long term disability coverage for the key executives at Interflex was a "big deal". Second, that the employer paid all of the premiums for the coverage throughout his tenure at Interflex. Third, all of Interflex's upper level executives were able to participate in the insurance program, albeit with differing levels of financial contribution towards the premiums by the company. Further, the *Demars* Court cites to the opinion of the Sixth Circuit in *Massachusetts Casualty Insurance Co. v. Reynolds*, 113 F.3d 1450 (1997), holding that an employer had provided ERISA governed benefits to employees by purchasing individual disability insurance policies for them. *DeMars, supra* at 449. Hence, plaintiff's reliance on the opinion in *DeMars* to support the contention that the Interflex key man disability insurance program is not governed by ERISA is faulty, and should not be accepted by this Court.

As plaintiff has not advanced any sound legal basis for his contention that the policy here at issue is not governed by ERISA, and in view of plaintiff's concession that the ERISA statute of limitation bars the claim if ERISA does govern the policy, defendant is entitled to summary judgment.[3]

[3] It is interesting to note that in plaintiff's Memorandum of Law, plaintiff cites in support of the position that he has a valid of claim a number of instances where witnesses have faulty recollections of events which occurred during the period 1992 through 1997, *e.g.*, defendant's claims examiner's deposition testimony concerning her lack of recollection of certain events (plaintiff's Memorandum of Law at page 15) and the producer, Mr. Johnson's absence of recollection concerning certain events (plaintiff's Memorandum of Law at pages 17-18). The purpose of statutes of limitations is to protect defendants from stale claims where, as here, the memories of witnesses of critical events have been clouded by time. The prejudice posed by such failures of recollection due to the extreme passage of time, as cited to by the plaintiff, are precisely what statutes of limitations protect against. Plaintiff cannot be permitted to take advantage of such failures of recollection by his apparent deliberate failure to bring a timely claim against defendant.

## III. CONCLUSION

For the reasons set forth in particularity here, and in defendant's opening Memorandum of Law in Support of its Motion for Summary Judgment, defendant is entitled to judgment as a matter of law, and dismissal of plaintiff's Complaint, with prejudice.

Respectfully submitted,

Defendant, Minnesota Life Insurance Company,

By its attorneys

VETTER & WHITE

BY /s/ Timothy Bliss
Brooks Magratten, No. 3585
bmagratten@vetterandwhite.com
Timothy Bliss, No. 6228
tbliss@vetterandwhite.com
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 (Fax)

HARVEY ♦ PENNINGTON LTD.

BY: [signature]
Melissa Lang
1835 Market Street, 29th Floor
Philadelphia, PA 19103
(215) 575-4168
(215) 568-1044 (Fax)

Dated: 12/15/06

CERTIFICATE OF SERVICE

To:

Alan J. Pierce, Esq.
Hancock & Estabrook, LLP
1500 MONY Tower I
P.O. Box 4976
Syracuse, NY 13221-4976

Jessica Basso, Esq.
D'Amico & Burchfield, LLP
536 Atwells Avenue
Providence, RI 02909

I hereby certify that I electronically filed the within reply brief on December 15, 2006. The reply brief is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-listed counsel of record has been effectuated by electronic means.

/s/ Timothy M. Bliss