HANCOCK & ESTABROOK, LLP
COUNSELORS AT LAW

*Writer's Direct Dial No.: (315) 425-3546*
*EMAIL: apierce@hancocklaw.com*

January 16, 2007

**VIA ELECTRONIC FILING**
Hon. Lincoln D. Almond
United States Magistrate Judge
U.S. District Court, District of Rhode Island
Federal Building and Courthouse
Providence RI 02903

**Re: McGill v. Minnesota Mut. Life Ins. Co.**
**Case No.: 1:05-CV-481**

Dear Magistrate Judge Almond:

I write this letter in response to the January 4, 2007 letter of Melissa Lang, Esq., counsel for Defendant Minnesota Mutual Life Insurance Company in this action and this Court's Order entered on January 9, 2007 giving Plaintiff John L. McGill seven days to respond to the legal arguments contained in the letter.

The fundamental premise of Attorney Lang's legal argument in her improper letter is a red herring and false. Thus, she states that "Plaintiff's position is that the proposal and the application, in and of themselves, create a contract of insurance." Lang Letter at p. 1. She made this very same argument at oral argument, and I countered at the start of my argument that this assertion was false and designed to draw the Court's attention away from the undisputed fact that according to the language of the Policy issued by MML to McGill the applicable Policy in this case consists of the Policy and the Application. Thus, as I pointed out at argument, the Policy states that "This policy and the copy of your application attached to it contain the entire contract between you and us." MML Statement of Undisputed Facts ("SUF") Exh. "D", at p. 8 (page 13 of 15 legend at top). It appears that Attorney Lang purposely separated the Policy and the Application (SUF, Exh. "F") in her submission notwithstanding that they constitute the Policy in this case because it destroys her straw-man argument that McGill relies on the proposal (Term Sheet) and the Application as the Policy.

Once the Court rejects this false assertion of what McGill claims, the "offer and acceptance" analysis that the Court inquired about applies clearly and demonstrates that there are questions of fact on the breach of contract claim in this case under the unique language contained in MML's Application signed by McGill and the Policy itself. The Application was MML's offer of coverage to age 65 with an "owned occupation period" to age 65. SUF Exh. "F" at p. 5 (page 3 of 11 legend at top). McGill accepted this coverage by signing it. MML attempted to change the coverage in the "FOR HOME OFFICE USE ONLY" portion of the Application to be a 5 year benefit period and a 5 year own occupation period. However, the Application states under this heading **"Home Office Corrections or Additions – Acceptance of the policy shall ratify changes entered here by Minnesota Mutual Life."** (Emphasis supplied)

{H0721638.1}

As I argued on December 21st, McGill did not "accept" the Policy and thus "ratify" these changes because the Policy was never delivered to him. We certainly have at least raised substantial questions of fact on this issue. As also noted at oral argument, Virginia law makes clear that the Policy had to be delivered to McGill and he had to be given an opportunity to accept or reject the Policy within 10 days. *See* Va. Code Ann. § 38.2-3502.[1] Thus, MML's changes – from age 65 coverage with an age 65 own occupation period to a 5 year benefit and own occupation period – were never accepted by McGill. MML argues that this means there never was any Policy and that McGill should return the 5 years of benefits paid minus his premiums paid for the Policy. That is not the case. Because MML's changes were not accepted, they did not become part of the Policy. The Application does not state that if the Home Office changes are not ratified by acceptance of the Policy, that the Policy is void. It simply states: "Home Office Corrections or Additions – Acceptance of the policy shall ratify changes entered here by Minnesota Mutual Life." Thus, only the Home Office changes are not part of the Policy. If MML wanted to protect itself from the fact that it has now issued a Policy that contains different terms from what it wanted, it need only (1) make sure that its agent, Johnson, deliver the Policy to McGill and have written proof of that fact; (2) insert different language in its Policy and Application; or (3) not issue the Policy.

Moreover, there is additional language in the Policy and Application that creates questions of fact on the coverage here. First, it is undisputed that McGill's MML Policy was prepaid at the time the Application was signed by McGill and taken by Johnson. The Application has the "PREPAYMENT" box checked "Yes," See SUF Exh. "F", at p. 7 (page 6 of 11 legend at top), and McGill states that the Policy was prepaid at the time of the Application. McGill Decl. ¶ 9.

Part 3 of the Application is labeled "Agreements, Certification and Authorization." As relevant here, this part of the Application provides that if the Policy is prepaid there should be a "**Receipt and Temporary Life Insurance Agreement, and *** Conditional Health Receipt.**" SUF Exh. "F" at p. 10 (page 11 of 11 legend at top) (Emphasis in original). Given that it is undisputed that the Policy was prepaid, there are questions of fact as to the effect of the Receipt and Temporary Life Insurance Agreement, and the Conditional Health Receipt issued by MML, documents which are not before the Court and which to my knowledge were not disclosed in discovery in this case.

Given the false premise of Attorney Lang's argument in her Letter and the unique language contained in the undisputed Policy at issue here – MML's Policy and the attached Application signed by McGill – the cases relied on by Attorney Lang need little discussion. As discussed above, there is a "mirror image" between the Policy that McGill and MML agreed to

---

[1] In relevant part the Statute provides: "Any individual accident and sickness insurance policy delivered or issued for delivery in this Commonwealth shall have printed on it a notice stating substantially: *** RIGHT TO RETURN THE POLICY WITHIN 10 DAYS. If for any reason you are not satisfied wit your policy, you may return this policy to the Company within ten days of the date you received it and the premium you paid will be promptly refunded."

under the terms of MML's documents because MML's changes were never made a part of the Policy because they were never accepted or ratified. By the terms of MML's documents, this means the changes were not added.

Finally, Attorney Lang is incorrect in arguing that McGill "still had the opportunity to reject the limited coverage" when he found the Policy in the office of his employer's HR director and that he "elected *** to file a claim for benefits, and accept payment of the benefits available under the terms of the limited benefit disability insurance policy *** thus ratifying the policy as issued." Lang Letter at p. 3. McGill had no choice since he was already disabled – he was diagnosed with severe sleep apnea in April 1994, found the Policy in October 1995, and filed for disability in November 1995. McGill Decl. ¶¶ 18-20. That is not acceptance and ratification of changes made by MML in June 1992 after 3 years of performance by both parties – except that McGill did not have the Policy and did not know what it stated contrary to the Application without any Home Office changes written in – and the case cited by Attorney Lang do not hold it is under these facts.

Thanking you in advance for your continued consideration in this matter, I remain

Very respectfully yours,

HANCOCK & ESTABROOK, LLP

s/Alan J. Pierce

Alan J. Pierce

AJP/lmr
cc: Jessica L. Basso, Esq. (service by e-filing)
Melissa Lang, Esq. (service by mail)
Timothy M. Bliss, Esq. (service by e-filing)