UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN L. McGILL | : | |
| | : | |
| v. | : | C.A. No. 05-481S |
| | : | |
| MINNESOTA MUTUAL LIFE INSURANCE CO. | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

**Background**

Before this Court is Defendant Minnesota Mutual Life Insurance Company's ("Defendant" or "MML") Motion for Summary Judgment (Document No. 20) pursuant to Fed. R. Civ. P. 56. In this action, Plaintiff John McGill ("Plaintiff" or "McGill") alleges breach of contract, misrepresentation, fraud and breach of fiduciary duty in connection with a disability insurance policy issued to Plaintiff by MML in 1992. The gravamen of Plaintiff's claim against MML is that he is entitled to disability benefits through age sixty-five and not subject to the five-year benefit cap applied to him by MML. Defendant's Rule 56 Motion is directed at all counts of Plaintiff's Complaint.

Defendant filed its Motion for Summary Judgment and Memorandum of Law (Document No. 20) on October 20, 2006. Plaintiff objected to Defendant's Motion and filed his Memorandum of Law in Opposition (Document No. 30) on December 1, 2006. Defendant filed a reply (Document No. 33) on December 15, 2006. This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). A hearing was held on

December 21, 2006. After reviewing the Memoranda and exhibits submitted, listening to the arguments of counsel and conducting my own independent research, I recommend that Defendant's Motion for Summary Judgment (Document No. 20) be GRANTED and that the District Court enter final judgment in favor of Defendant.

**Statement of Facts**[1]

The basic facts are undisputed. On November 20, 1991, Plaintiff was hired by Eastern Shore Printing Corporation of Virginia to serve as a Vice-President starting January 6, 1992. Plaintiff's letter of hire entitled him to several fringe benefits including "paid disability insurance." Pl.'s Ex. 1. The Company was later renamed as The Interflex Group, Inc. ("Interflex"), and Plaintiff held the position of President of Interflex at the time of his departure "due to a company reorganization effective November 30, 1995." Def.'s Ex. G. Plaintiff and Interflex entered into a "Severance Agreement and General Release" on December 20, 1995 in connection with Plaintiff's separation from employment. Id. Although MML is not a party to this Severance Agreement, it argues that the Release is broad enough to bar Plaintiff's claims against it. Plaintiff disputes that the Release applies to the common law claims asserted in his Complaint against MML.

Although the parties dispute the context, it is undisputed that Plaintiff applied for disability insurance coverage with MML through a broker, J. Michael Johnson ("Johnson"), on or about May 12, 1992, to supplement a "group" disability benefit provided to all Interflex employees. Def.'s Ex. F; and McGill's Declaration, ¶¶ 3 and 9. Plaintiff applied for "own occupation" disability insurance up to age sixty-five from MML. Id. Plaintiff contends he was purchasing an individual disability

[1] These facts are gleaned from the parties' Local Rule Cv 56(a) statements and exhibits.

policy from MML which is not regulated by ERISA.[2] MML contends that the insurance was offered as part of a "keyman" disability insurance program sponsored by Interflex for its senior executives including Plaintiff and thus it is an "employee welfare benefit plan" governed by ERISA.

After Plaintiff completed the application for disability insurance coverage through age sixty-five, MML "sent a nurse to [his] office to give [him] one of these office type physicals." Def.'s Ex. A at p. 86; and McGill's Declaration, ¶ 10. In the Application, Plaintiff also authorized his personal physician, Dr. Ted Staples, to release medical records and information to MML. Def.'s Ex. F. Under a Section entitled "For Home Office Use Only," the Application provides for "Home Office Corrections or Additions" and notes that "[a]cceptance of the policy shall ratify changes entered here by [MML]." Id. Below this section, the Application contains the following handwritten changes:

> 50% premium increase
> Base Benefit Period. 5 Yrs.
> Guaranteed Increase Agreement plus omitted
> Plan of Coverage. Own Occupation Insurance Policy 5 Year
> Own Occupation Period

Id.

MML ultimately issued a disability income policy for Plaintiff (Policy No. 1-933-6894) effective July 2, 1992. Def.'s Ex. D. The type of coverage is identified in the policy as a "disability income/own occupation insurance policy" with a "maximum benefit period for disability" of "five years" and a ninety-day waiting period. Id. By letter dated July 21, 1992,[3] MML thanked Plaintiff

---

[2] ERISA is the federal Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq., which generally preempts state regulation (by statute or common law) of employee welfare benefit plans. See 29 U.S.C. §§ 1003 and 1144(a).

[3] The July 21, 1992 letter was addressed to Plaintiff at Interflex's business address. Plaintiff's MML Application included both his home and business address, and a box is checked indicating that mail should be sent to the business address. Def.'s Ex. F.

for his Application and indicated that "it was necessary to make some changes to the policy we are offering." Def.'s Ex. E. The letter also noted Plaintiff's right to "dispute" the changes and that the decision was based on his build (6 feet, 254 pounds), abnormal blood test results and information from Dr. Staples.

Plaintiff does not dispute that the disability income policy (No. 1-933-689H) issued in his name contains a five-year maximum benefit period. McGill's Declaration, ¶ 11. However, Plaintiff denies that the policy or the July 21, 1992 letter were ever delivered to him either by MML or Johnson, the independent insurance broker. Id., ¶ 12; and Pl.'s LR Cv 56(a)(4) Statement, ¶ 6. Plaintiff asserts that Johnson advised him in mid-July 1992 that MML issued the policy "without a hitch" except for a "slightly higher premium" which was not "material" to Plaintiff. McGill's Declaration, ¶¶ 13 and 15. It is undisputed that Interflex paid the policy premiums for Plaintiff. However, the parties dispute whether or not such premiums were imputed as taxable income to Plaintiff.

Plaintiff admits receiving annual policy review statements from MML for the years 1993 through 1996. Id., ¶ 16. Although these statements do not indicate that disability benefits are subject to a five-year cap, they do advise Plaintiff that "[f]ull details are found in your policy." Pl.'s Ex. 4. Plaintiff contends that he did not receive the policy until October 1995 when he was looking for other documents in the office of one of Interflex's owners/directors. McGill's Declaration, ¶ 20; and Pl.'s LR Cv 56(a)(4) Statement, ¶ 9.

Plaintiff was diagnosed with severe obstructive sleep apnea in April 1994 and asserts that, by the Fall of 1995, the condition disabled him from working at his own occupation. McGill's

Declaration, ¶ 18. Plaintiff filed a claim for disability benefits with MML after his departure from Interflex.[4] Plaintiff's claim was approved, and he received monthly disability benefits from MML for a five-year period ending in early 2001.

Although Plaintiff admits he obtained a copy of the policy in October 1995, he contends that he did not learn about the five-year benefit cap until a May 1996 telephone conversation with an MML claims examiner. McGill's Declaration, ¶ 25. Plaintiff brought suit against MML and Johnson in the Virginia Circuit Court in June 1997 challenging the applicability of the five-year cap to him. Id., ¶ 29; and Def.'s Ex. I. Plaintiff alleged breach of contract, fraud and breach of fiduciary duty in that state court action. Id. The Virginia suit was "concluded without prejudice to this action by way of demurrer," i.e., withdrawn by Plaintiff. McGill's Declaration, ¶ 29.

In 2001, Plaintiff filed for bankruptcy in the Northern District of New York. The bankruptcy proceeding concluded in 2002. It is undisputed that Plaintiff did not disclose or "schedule" his claim against MML as an asset in the bankruptcy. MML contends that this failure to disclose should bar Plaintiff's claims in this case under the doctrine of judicial estoppel. Plaintiff counters that he did not "schedule" the claim as an asset based on the advice of his bankruptcy attorney and the Bankruptcy Trustee. McGill's Declaration, ¶ 32. Plaintiff contends that judicial estoppel should not apply because he relied on this advice, and his right to receive disability benefits is, in any event, exempt property under the Bankruptcy Code. See 11 U.S.C. § 522(d)(10)(C).

---

[4] MML advises that after he filed his disability claim, Plaintiff continued to serve as a business consultant, completed an LLM degree, founded a law firm, operated a real estate holding company, passed the New York Bar exam and held public office in Oswego, New York. Plaintiff does not dispute these activities. MML presumably brings them to the Court's attention to cast aspersions on the credibility of Plaintiff's disability claim. However, the merits of Plaintiff's "own occupation" disability claim are not presented in this case. MML approved Plaintiff's claim and discontinued benefits based on the five-year cap and not due to a non-disability finding. Thus, Plaintiff's post-claim activities are not presently relevant.

**Summary Judgment Standard**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514-2515, 91 L. Ed. 2d 202, (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon

conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson v. Liberty Lobby, 477 U.S. at 249).

## Discussion

### A. Summary of Arguments

1. MML first argues that the disability income policy issued to Plaintiff is part of an employee welfare benefit plan exclusively regulated by ERISA. Thus, MML contends that Plaintiff's state common law claims are preempted by ERISA, and any remaining ERISA claim is barred by ERISA's three-year limitations period.[5] See 29 U.S.C. § 1113.

Plaintiff counters that the individual disability income policy he purchased from MML is not part of an employee welfare benefit plan. Thus, he argues that his state common law claims are neither preempted by ERISA nor barred by ERISA's limitations period. In addition, Plaintiff contends that the issue of whether an ERISA plan exists is a question of fact which cannot be decided in MML's favor under Fed. R. Civ. P. 56 on the evidentiary record presented.

---

[5] Plaintiff concedes that the case is time-barred if this Court determines that ERISA exclusively governs this action.

2. MML next argues that Plaintiff's claims are barred by judicial estoppel arising out of his bankruptcy filing and waiver arising out of his Release Agreement with Interflex. As noted above in the Statement of Facts, Plaintiff disputes that his claims are barred by either of these legal doctrines.

3. MML next argues that even if ERISA does not preempt Plaintiff's claims, his state law claims for fraud, misrepresentation and breach of fiduciary duty are time-barred. Plaintiff "concedes that with the exception of his claim for breach of contract, the remaining claims are barred by the applicable statute of limitations under Virginia law." Pl.'s Mem. in Opp. at p. 26. Thus, Counts I (misrepresentation), III (fraud) and IV (breach of fiduciary duty) may be dismissed and this Court so recommends.

4. MML finally argues that Plaintiff's breach of contract claim (Count II) fails on the merits as a matter of Virginia law and that summary judgment should enter in its favor. Plaintiff counters that there are questions of fact under Virginia law that preclude summary judgment and require a trial on his breach of contract claim. As will be discussed in more detail below, this Court agrees with MML's legal arguments regarding Count II and recommends that summary judgment enter in MML's favor on that ground. Thus, it is not necessary for the Court to address MML's other arguments based on ERISA, judicial estoppel or waiver.

**B. Breach of Contract**

In any breach of contract action, the first question is what constitutes the contract or agreement sued upon. The second question is whether the contract is enforceable, i.e., supported by the fundamental elements of offer, acceptance and consideration.

In this case, Plaintiff contends that MML is contractually obligated to pay disability benefits to him until he reaches age sixty-five and that MML breached that contract by discontinuing benefits after five years when he was fifty-three years old. Specifically, Plaintiff points to (1) an MML document presented to him by Johnson on May 12, 1992; and (2) the MML Application prepared on the same date. See Def.'s Exs. C and F. The former MML document (Def.'s Ex. C) is identified by Plaintiff as a "term sheet" and by MML as a "proposal." Regardless of the label attached to it, it is plain that the document is a generic promotional brochure generally outlining MML's disability income plan. It will be identified in this report as a "Term Sheet" solely for consistency purposes. Plaintiff contends that these two documents (the Term Sheet and Application) "constituted a contract between himself and MML" providing for age sixty-five disability income coverage. Pl.'s Mem. in Opp. at p. 27. MML responds that the "Term Sheet" is not sufficiently definite to constitute an offer of contract, and the "Application" was merely an offer to purchase a contract of insurance which was rejected and countered by MML. MML asserts that the insurance contract is the July 2, 1992 policy (Def.'s Ex. D) which unambiguously provides that disability benefits are payable for a maximum of five years. See Smith v. Colonial Ins. Co. of Calif., 515 S.E.2d 775, 777 (Va. 1999) ("[A]n application for insurance is merely an offer to enter into a contract...[t]he insurance policy is the contract between the parties."). For the reasons discussed below, this Court agrees with MML that there is no contract of insurance between MML and Plaintiff providing for disability benefit coverage through age sixty-five.

The parties agree that Virginia law governs this dispute. Under Virginia law, insurance policies are construed "in accordance with traditional principles of contract law." General Analytics

Corp. v. CNA Ins. Cos., 86 F.3d 51, 53 (4th Cir. 1996) (citing Allstate Ins. Co. v. Eaton, 448 S.E.2d 652, 655 (Va. 1994); and S.F. v. West Am. Ins. Co., 463 S.E.2d 450, 452 (Va. 1995)). "A contract is created when a plain enforceable offer is followed by a plain enforceable acceptance" which "correspond[s] exactly to the terms of the offer." Arnold v. Amoco Oil Co., 872 F. Supp. 1493, 1502 (W.D. Va. 1995) (citing E. Allen Farnsworth, Contracts §§ 3.3 and 3.21 (2nd ed. 1982)).

First, as to the Term Sheet, this Court agrees that it is not sufficiently definite to constitute an offer of a disability insurance contract. Other than the fact that Plaintiff's name is typed on a cover sheet to the document, it is a generic marketing piece that generally describes MML's disability income product. The dispute in this case centers on whether MML agreed to provide Plaintiff with disability coverage to age sixty-five, and the "Term Sheet" does not specifically offer an age sixty-five coverage term to Plaintiff. In fact, it notes that "[o]ur flexible policy allows you to design a plan of income protection to meet your personal needs" and that "[y]ou will be eligible for benefits, for the length of your benefit period (including lifetime), as long as disability continues and you are earning not more than 30% of your prior income." Def.'s Ex. C. (emphasis added). The phrase "benefit period" is later defined as "the maximum length of time you'll receive benefits when disabled" and it is noted that "[y]ou can select different benefit periods within a single policy to match your various income protection needs." Id. Finally, the "Term Sheet" prominently advises that it "does not in any way replace the specific coverages provided in the policy. See the policy for details." Id. (emphasis added).

Second, as to the Application, it is "merely an ex parte offer...to purchase a contract of insurance, not an insurance contract." Peoples Life Ins. Co. v. Parker, 20 S.E.2d 485, 487 (Va.

1942). See also Connelly v. Prudential Ins. Co., 610 F.2d 1215, 1218-19 (4th Cir. 1979). In Hayes v. Durham Life Ins. Co., 96 S.E.2d 109, 111 (Va. 1957), the Virginia Supreme Court plainly explained the applicable contract principles as follows:

> To be effective as a completion of a contract of insurance the acceptance of an application or proposal therefor, like the acceptance of offers generally, must be upon the terms offered. The application for insurance is a mere proposal for a contract on the part of applicant. It is one of two prerequisites in the creation of the contract, the other consisting of the acceptance of the offer. No contractual relationship exists between the parties until acceptance by the insurer, and the application may be withdrawn at any time by the applicant before it is definitely accepted.

In this case, Plaintiff applied to MML for "own occupation" disability income coverage through age sixty-five. Def.'s Ex. F. Under Virginia law that constituted an offer by Plaintiff to enter into an insurance contract with MML.[6] There is no evidence in the record that MML ever accepted the terms of Plaintiff's offer. In fact, the record supports MML's position that it responded to Plaintiff's offer with a counter-offer which acts as a rejection of Plaintiff's offer as a matter of Virginia law. See Arnold, 872 F. Supp. at 1502 ("An attempt to add to or change the terms of the offer turns the offeree's response from an acceptance into a counteroffer and a rejection of the offer."); Newman v. Snap-On Tools Corp., No. 87-0475-R, 1988 WL 1099676 at *1 (E.D. Va. Feb. 3, 1988) (citing Crews v. Sullivan, 113 S.E. 865 (Va. 1922)).

In particular, after considering the Application (Plaintiff's offer) and medical information obtained from Plaintiff's physician and the physical exam required by MML, MML was not willing

[6] In a recent submission to the Court (Document No. 37), Plaintiff argues that "[t]he Application was MML's offer of coverage to age 65 with an 'own occupation period' to age 65," and that he accepted MML's offer by signing the Application. Plaintiff's argument is nonsensical. If correct, then a proposed insured with insurability issues such as poor health could skirt underwriting/medical examination and unilaterally bind an insurer to his or her desired coverage by simply signing and submitting an insurance application.

to accept Plaintiff's offer to enter into an insurance contract providing for age sixty-five own occupation disability coverage. MML counter-offered for five-year own occupation disability coverage at an increased premium payment. While Plaintiff denied that he received a copy of the "changed" July 2, 1992 policy in a timely fashion or received timely notice of MML's decision not to offer age sixty-five coverage, the issue of whether Plaintiff ever accepted MML's counter-offer of five-year coverage is not before the Court. Although MML does not point to any express acceptance by Plaintiff of the policy with the five-year limitation, it argues that Plaintiff ratified the July 2, 1992 policy as issued by filing a claim under its terms and accepting benefits thereunder. Plaintiff alleges that the July 2, 1992 policy "was never delivered to him and therefore he could not have accepted and ratified the changes made by MML." Pl.'s Mem. in Opp. at p. 27. However, this case does not concern the benefits actually paid by MML to Plaintiff. Plaintiff's claim has nothing to do with the benefits paid. His claim alleges that MML breached the policy by failing to provide disability benefits to him thereafter until age sixty-five.

Plaintiff argues that there is a question of fact as to whether he accepted the policy revisions noted by MML on the Application and contained in the July 2, 1992 policy. While Plaintiff may be correct as the presence of this question of fact, it is simply not a material fact in this dispute. Since the July 2, 1992 policy unambiguously limits benefits to a five-year maximum, Plaintiff seeks to turn contract law on its head and boot strap his claimed failure to accept MML's counter-offer into an acceptance by MML of his proposed terms of insurance. Plaintiff's argument fails as a matter of fact and law.

Plaintiff relies primarily upon the following language in MML's Application:

> Home Office Corrections or Additions – Acceptance of the policy shall ratify changes entered here by [MML].

Def.'s Ex. F. Plaintiff argues that, based on this language in the Application, "unless [he] accepted the policy as changed he could not ratify the changes made by MML on the Application." Pl.'s Mem. in Opp. at p. 27. As noted above, it is irrelevant in this dispute whether Plaintiff actually accepted the policy as proposed by MML. Plaintiff attempts to leap from his failure to accept MML's counter-offer to a contract between himself and MML on the terms for which he applied, i.e., age sixty-five disability coverage. There is simply no evidence in the record that MML ever accepted Plaintiff's application for disability insurance through age sixty-five. Rather, the evidence conculsively establishes that MML rejected that application or offer, and made a counter-offer to Plaintiff after reviewing medical information obtained during the underwriting process. Regardless of whether Plaintiff accepted MML's counter-offer, the bottom-line is that there is no basis under Virginia law to construe these facts as suggested by Plaintiff.

Plaintiff cites no Virginia law supporting his position that MML is bound to give him the policy applied for because he never accepted the changes proposed by MML in its counter-offer. Further, Plaintiff cites no Virginia law holding that either MML's alleged failure to properly deliver the policy to him or the assurances allegedly made by Johnson that his policy was issued "without a hitch" bound MML to accept Plaintiff's Application as offered by him. Finally, the documents do not support Plaintiff's position. The Term Sheet (Def.'s Ex. C) and the policy review statements (Pl.'s Ex. 4) plainly refer Plaintiff to the policy for the details of coverage. The Application (Def.'s Ex. F) identifies Plaintiff as a "proposed insured," and the medical release authorization advises that such information is "to be used for the purpose of determining eligibility for insurance." The policy

also contains a merger clause which provides that "[t]his policy and the copy of your application attached to it contain the entire contract between you and us." Def.'s Ex. D.

This Court offers no opinion as to whether these facts may have presented a trialworthy issue as to Plaintiff's time-barred claims of fraud, misrepresentation or breach of fiduciary duty, against MML. In addition, this Court offers no opinion as to whether these circumstances may have presented any trialworthy claims by Plaintiff against Interflex and/or its employees, officers or directors, or Johnson.[7] Plaintiff's only remaining claim is a breach of contract claim against MML under Virginia law, and MML has met its burden under Fed. R. Civ. P. 56(c) of establishing that it is entitled to a judgment in its favor as a matter of law. Thus, this Court recommends that MML's Motion for Summary Judgment be GRANTED as to Plaintiff's Complaint.

**Conclusion**

For the reasons stated, I recommend that the District Court GRANT Defendant's Motion for Summary Judgment (Document No. 20) as to all claims in Plaintiff's Complaint and enter final judgment in favor of Defendant. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); LR Cv 72(d). Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1990).

[7] Plaintiff waived his claims against Interflex and its employees, officers and directors in the 1995 Severance Agreement and General Release. Def.'s Ex. G. Plaintiff named Johnson as a co-defendant of MML in his 1997 Virginia state court action (Def.'s Ex. I) but chose not to sue Johnson in this forum presumably due to a lack of sufficient contacts to support personal jurisdiction in this forum.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 18, 2007