UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN L. McGILL, Plaintiff, | ) | CIVIL ACTION NO.: |
| -vs- | ) | 05-CV-0481/S |
| MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF JOHN L. McGILL'S OBJECTIONS TO MAGISTRATE JUDGE ALMOND'S REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

This Memorandum of Law is submitted by Plaintiff John L. McGill ("McGill") in support of his objections to the Report & Recommendation ("R&R") of Magistrate Judge Lincoln Almond ("the Magistrate") to grant the motion for summary judgment herein by Defendant Minnesota Mutual Life Insurance Company ("MML"). This action concerns MML's issuance of an individual long-term disability ("LTD") insurance policy effective July 2, 1992 to McGill. The graveman of McGill's breach of contract claim is that McGill contracted for and accepted, through MML's authorized agent, J. Michael Johnson ("Johnson"), a Policy with maximum benefit and "own occupation" periods to age 65, but the Policy as written provides for a maximum benefit and own occupation period of five (5) years. The Policy was never delivered to McGill by MML or Johnson, and McGill never knew of these material changes in the terms of the coverage until May 1996, almost four years after the Policy became effective and over six months after he became disabled on November 30, 1995 and entitled to benefits under the MML Policy.

Although MML's motion was based on several grounds, the R&R only addresses the validity of McGill's breach of contract claim under Virginia law, which the parties agree governs that claim.[1] Accordingly, this Memorandum will only address that issue. For the reasons set forth herein, we respectfully submit that the Magistrate erred in recommending that this Court grant MML's motion for summary judgment on the grounds that there are no material questions of fact under Virginia law that require a trial of McGill's breach of contract cause of action.

**STATEMENT OF FACTS MATERIAL TO THE BREACH OF CONTRACT CAUSE OF ACTION**

MML's authorized agent, J. Michael Johnson ("Johnson") met with McGill on or about May 12, 1992 and presented him with a "Term Sheet" for the MML Policy and together they completed – Johnson prepared and McGill signed – the MML's Application ("the Application"). McGill Ex. 6 at 15, 78-79. On that same day McGill's employer, Interflex, remitted a check to Johnson in payment of the first month's premium due under the Policy as reflected in the Application. McGill Decl. ¶ 9; MML Ex. F. The Application specifically provides that the "benefit period" is age "65" and that it is an "own occupation insurance policy *** to age 65

---

[1] Thus, although the parties briefed and argued additional issues, the R&R does not address these issues because, having determined that summary judgment should be granted on the grounds that no questions of fact exist on the breach of contract claim, the Magistrate did not need to address the other issues. Those issues were: (1) whether the MML Policy insuring McGill is governed by ERISA, in which case the applicable statute of imitations bars this action and the Release executed by McGill in favor of his employer, Interflex, in November 1995, also releases any claims under ERISA; and (2) whether McGill is estopped as a matter of law from pursuing this action because he failed to list as an asset his potential claim against MML in the bankruptcy petitions and subsequent proceedings commenced by McGill and his wife in U.S. Bankruptcy Court for the Northern District of New York in 2001, which was concluded in 2002. Moreover, McGill conceded before the Magistrate that if ERISA does not preempt McGill's state law claims, then the law of Virginia, where the MML Policy was issued to McGill governs the state law claims and with the exception of McGill's breach of contract cause of action they are all barred by the applicable Virginia statutes of limitations.

own occupation period." MML Ex. F. McGill's Application is part of the bound MML Policy. McGill Decl. at ¶ 26. At the bottom of the last page of Part 1 of the Application, which is part of the bound MML Policy, it provides in bold and capital letters:

> **FOR HOME OFFICE USE ONLY**. *Home Office Corrections or Additions – Acceptance of the policy shall ratify changes entered here by Minnesota Mutual Life. Not to be used in CA (for Disability only), IA, IL, KS, KY, MD, MI, MO, NH, NJ, OR, PA, TX, WI or WV for change in age, amount, classification, plan or benefits unless agreed to in writing*. (Bold emphasis in original, italics emphasis supplied)

Following this typed language that is part of the form of the Application, the following handwritten information is set forth on the Application:

> OCC. E. 1426
> 50% premium increase
> Base benefit period. 5 yr.
> Guaranteed Increase Agreement plan omitted
> Plan of Coverage. Own Occupation Insurance Policy. 5 year
> Own Occupation Period.

A nurse employed by MML gave McGill a physical examination at Interflex's offices in June 1992. McGill Decl. ¶ 10. Effective July 2, 1992 MML issued the Policy, which provides for the payment of disability benefits to McGill in the event of a covered disability. MML Ex. D. However, the coverage provided for in the Policy, as written, does not conform to the provisions of the Application. Instead, the Policy as written purports to provide materially and substantially less coverage than what had been offered to McGill by MML and accepted by McGill by signing the Application on May 12, 1992. Thus, on page 1A of the Policy, entitled "YOUR POLICY INFORMATION," it states that "OWN OCCUPATION PERIOD – FOR 5 YEARS" and "MAXIMUM BENEFIT PERIOD FOR DISABILITY: FIVE YEARS." This is contrary to the "age 65" maximum benefit period and own occupation period specified in the Application.

Consistent with the Application, however, the same page of the Policy states that it is "NON-CANCELLABLE AND GUANANTEED RENEWABLE TO INSURED'S AGE 65" and that the disability benefit is $3,400 per month 'THROUGH JUL 1, 2013," which is the year and month that McGill turns 65. McGill Decl. ¶ 24. As issued, the Policy also increased the monthly premium charge for the lesser coverage it provided by approximately 50%.

Neither MML nor its agent, Johnson, delivered the Policy to McGill, nor did they inform or notify McGill in any manner of the purported materially reduced maximum benefit period contained in the Policy as issued. McGill was never asked by MML or Johnson to sign an amended application, and he would have refused to do so since it provided substantially less coverage than what he had contracted for. McGill Decl. ¶12. Instead, in July 1992 Johnson simply called McGill and advised him that he had made several attempts to deliver the MML Policy to him, but that McGill was either out of town or unavailable. Johnson also told McGill that the Policy had been issued by MML "without a hitch," and only noted in passing that MML would be charging a slightly higher premium than Johnson originally quoted when the Application was completed and accepted by McGill because of his physical examination. Johnson assured McGill that the Policy as issued provided the same coverage that McGill had contracted for as set forth in the Term Sheet and his signed Application. McGill Decl. ¶ 13.[2]

MML's agent, Johnson, admitted that a change in maximum benefit period from age 65 to five years is "certainly a big change" in the policy. McGill Ex. 6 at 90-92. MML required Johnson to deliver the policy to McGill. *Id.* at 41-42, 89. Any conversation that he had with

---

2 The only documentation McGill received from MML or Johnson after the Policy was issued were "Annual Policy Reviews" sent to McGill's home beginning July 2, 1993, the first anniversary of the effective date of the Policy, and on every successive anniversary date of the Policy thereafter until July 2, 1996. McGill Ex. 4. The Annual Policy Reviews are silent as to the maximum benefit period and the "own occupation" period under the Policy.

McGill concerning the benefit limitation period would have occurred at the time of delivery of the Policy. *Id.* at 40. Although Johnson initially testified that he delivered the Policy to McGill, he admitted that he had no specific recollection of the circumstances under which he delivered the policy. *Id.* at 36-37. After being shown entries in the MML Individual Claim Memoranda (McGill Ex. 18), including the entry on page 12 reflecting his November 18, 1996 telephone conversation with MML's Senior Claims Examiner, Cheryl Wolf ("Wolf"), Johnson he did not recall who he physically delivered or gave McGill's Policy to. McGill Ex. 6 at 87.[3] Wolf testified, based on the entries in the Individual Claim Memoranda, that Johnson told her that he delivered McGill's policy to Mickey Doyle. McGill Ex. 7 at 79-81; McGill Ex. 18 at 13.

In April 1994 McGill was diagnosed with severe obstructive sleep apnea. By the Fall of 1995 his sleep apnea had progressed to the extent that it rendered him disabled and incapacitated from continuing to work at his "occupation" at Interflex. McGill Decl. ¶ 18. In October 1995 while McGill was looking through the Interflex HR Department files where Mickey Doyle worked for Minutes of a September Board of Directors meeting he inadvertently came across a folder with his name on it and thumbed through it and saw the Term Sheet he had obtained from Johnson for his MML Policy. He took the folder and kept looking for the Board Minutes without success. McGill Decl. ¶¶ 19-20.

McGill filed for disability benefits with MML through Johnson. MML accepted his disability claim and following the 90 day waiting period he began receiving the $3,400 monthly benefit payment from MML and a waiver of premium for the MML Policy pursuant to its terms. At that time McGill

---

[3] When asked what he told McGill about the modification to the policy, Johnson stated that "the same thing I would tell anyone; that the contract had been modified." McGill Ex. 6 at 38. When asked whether he discussed with McGill the limitation of the benefit period to 5 years, Johnson testified that "I really can't recall the conversation. I'm sure that we had a typical conversation that anyone would have. He would want to know why it was changed, if it's permanent, if there is anything we can do about it, and those kinds of things. I can't remember the specifics of the conversation." *Id.* at 39-40.

reasonably believed, based on the information given to him by MML and Johnson, that his disability benefit payments under the Policy would continue monthly until his 65th birthday in July 2013 so long as he continued to meet the definition of "disability" contained in the Policy. McGill was only 48 years old when he became permanently disabled in November 1995. McGill Decl. ¶¶ 21, 23.

In May 1996 McGill called MML to inquire about the inflation protection clause referred to in the Annual Policy Reviews he had received, and spoke to Wolf, MML's Senior Claims Examiner, for his claim. In that conversation he learned for the very first time that the MML Policy as issued purported to provide for disability benefit payments for a maximum term of only five years, not until age 65 as set forth in the Term Sheet and Application offered by MML and Johnson and accepted by McGill in May 1992. McGill Decl. ¶ 25. When McGill reviewed the Policy after this conversation with Wolf it was contained in bound folder that included a signed copy of his May 1992 Application and a "Revised Term Sheet" which was inserted, unbound, in the back of the folder. The Revised Term Sheet reflects the material changes to the coverage in the Policy as issued – the reduction in the maximum benefit period and the "own occupation period" to five years rather than to age 65 as provided in the original Term Sheet and Application. The Revised Term Sheet was never presented to McGill at all, let alone for his acceptance or consent. McGill Decl. ¶ 26.

In McGill's conversation with Wolf in May 1996 he also learned for the first time of a letter dated July 21, 1992 (MML Ex. E, McGill Exs. 16 and 17) that Jon Fasching of MML's Underwriting Department purportedly sent informing McGill that MML had decided to issue the Policy and stating, among other things, that "it was necessary to make some changes to the policy we are offering." McGill did not receive this July 21, 1992 letter until Wolf sent a copy of it to him in May 1996 after their conversation, nearly four years after the letter had allegedly been written and sent and the Policy issued, and more than six months after he had become permanently disabled. McGill Decl. ¶ 27.

Notably, the letter does not state or indicate the materially reduced maximum benefit period and own occupation period provided in the Policy as issued.

MML's Senior Claims Examiner Cheryl Wolf, who handled McGill's claim, had no knowledge of whether the letter was actually sent to McGill or the agent, Johnson. McGill Ex. 7 at 44-45. She acknowledged that there is nothing in the letter that specifies what the modifications to McGill's Policy were, including the 50% premium increase, the reduction in benefit period from age 65 to 5 years, or the omission of GIA benefits. *Id.* at 45. Wolf testified that she mailed a copy of McGill Ex. 17, another copy of the July 21, 1992 letter, to McGill in June 1996. *Id.* at 48-49.[4]

Johnson does not recall ever seeing the July 21, 1992 letter from MML to McGill regarding the modified Policy that was issued. McGill Ex. 6 at 46. Like Wolf, Johnson admitted that the letter does not specify or discuss any of the modifications, including the change in maximum benefit period from age 65 to 5 years. *Id.* at 93-94. Johnson has no idea if McGill ever received this letter. *Id.* at 94. Johnson never gave any written notice to McGill regarding the modifications to his policy either prior to or after the Policy was issued. *Id.* at 95.

MML's Individual Claim Memoranda (McGill Ex. 18, at 12) contains an entry for a November 18, 1996 telephone conversation between Wolf and Johnson. Johnson told Wolf he had advised McGill's attorney that he looked in his files, but could not find an amendment to the

---

4 MML's Individual Claim Memoranda, generated by Wolf and the MML Claims Department regarding McGill's claim, contains an entry dated June 3, 1996 reflecting the conversation between Wolf and McGill. Wolf wrote "Informed him he was issued a modified contract w/ a rating. He was unaware of this." McGill Ex. 18 at 10. Wolf also told him about the July 21, 1992 letter allegedly sent to him by Underwriting in their conversation, and Wolf agreed to send him a copy. She testified that starting with this conversation on June 3, 1996 she knew there was a question whether McGill had known that his benefit period had been reduced. McGill Ex. 7 at 70-71. Wolf testified that according to the Claim Memoranda notes, McGill was not aware of the modified policy until June 3, 1996. *Id.* at 86-87.

policy signed by McGill changing the maximum benefit term. Wolf did not know whether MML required that when an amended policy is issued there is a requirement that the insured sign an acknowledgment of that amendment, but there was no signed amendment for McGill's policy in MML's files. McGill Ex. 7 at 76-78. Johnson testified that currently – in 2006 – when an issued policy is modified from the one presented by him to the insured both the insured (McGill) and the agent (Johnson) would have to sign off saying that they agreed to the policy modification. Johnson does not recall whether that was required at the time McGill's Policy was issued. McGill Ex. 6 at 35-36.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(C)(1) the standard of review is de novo. Specifically, the statute provides, in relevant part, as follows:

> Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [magistrate judge]. The judge may also receive further evidence or recommit the matter to the magistrate [magistrate judge] with instructions.

## ARGUMENT

### THERE ARE MATERIAL QUESTIONS OF FACT UNDER VIRGINIA LAW THAT REQUIRE A TRIAL OF MCGILL'S BREACH OF CONTRACT CAUSE OF ACTION

The sole basis upon which the Magistrate has recommended that MML's motion for summary judgment be granted is that there are no "material" questions of fact requiring a trial with regard to McGill's breach of contract claim. We respectfully disagree.

As demonstrated herein, there is a fundamental flaw in the Magistrate's R&R. Although the R&R purports on its face to employ a strict "mirror image" "offer and acceptance" analysis to the contract claim in this case (R&R at 9-11), it fails to actually apply that analysis to the facts in the case. Thus, the Magistrate concludes that the Application was McGill's "offer" to accept "age 65" coverage and that MML rejected this offer when it made a "counteroffer" by issuing the Policy to provide coverage for five years. *Id.* at 11, 12, 13.[5] The Magistrate, however, acknowledges that McGill "may be correct" that "there is a question of fact as to whether he accepted the policy revisions noted by MML on the Application" (*Id.* at 12) and that "MML does not point to any express acceptance by [McGill] of the policy with the five-year limitation." *Id.* Moreover, the Magistrate incredibility concludes that "the issue of whether [McGill] ever

---

[5] Thus, page 11 of the R&R states: "In this case, Plaintiff applied to MML for 'own occupation' disability income coverage through age sixty-five. Def.'s Ex. F. Under Virginia law that constituted an offer by Plaintiff to enter into an insurance contract with MML. There is no evidence in the record that MML ever accepted the terms of Plaintiff's offer. In fact, the record supports MML's position that it responded to Plaintiff's offer [the application] with a counter-offer which acts as a rejection of Plaintiff's offer as a matter of Virginia law." (footnote omitted) In addition, on page 12 the Magistrate wrote that "[i]n particular, after considering the Application (Plaintiff's offer) *** MML counter-offered for five-year own occupation disability coverage at an increased premium payment." Finally, on page 13 the R&R provides as follows: "There is simply no evidence in the record that MML ever accepted Plaintiff's application for disability insurance through age sixty-five. Rather, the evidence conclusively establishes that MML rejected that application or offer, and made a counter-offer to Plaintiff after reviewing medical information obtained during the underwriting process."

accepted MML's counter-offer of five-year coverage is not before the Court" (*Id.* at 12), and that "it is irrelevant in this dispute whether [McGill] actually accepted the policy as proposed by MML." *Id.* at 13. The Magistrate's purported "offer and acceptance mirror image" analysis cannot be squared with his findings and conclusions that there is a question of fact whether McGill ever accepted MML's counteroffer and that whether McGill accepted it is irrelevant in this case.

The first erroneous finding in the R&R concerns what constitutes the insurance contract in this case. The R&R correctly notes that "MML asserts that the insurance contract is the July 2, 1992 policy (Def.'s Ex. D) ***." R&R at 9. Thus, MML incorrectly focuses exclusively on the Policy to the exclusion of the Application. However, there can be no doubt that under the language of the Policy the insurance contract between MML and McGill consists of the July 2, 1992 Policy document (MML Ex. D) and the Application (MML Ex. F), which was bound with the Policy.

Thus, as we conceded at oral argument and in our January 16, 2007 post-argument letter in response to MML's January 4, 2007 letter, the Policy states clearly and unequivocally that "[t]his policy and the copy of your application attached to it contain the entire contract between you and us." (MML Ex. D, at 8) Thus, the Magistrate's discussion of the Term Sheet as creating a contract of insurance is unnecessary. R&R at 10.[6]

---

[6] Although the Magistrate wrote that McGill "contends that these two documents (the Term Sheet and Application) 'constituted a contract between himself and MML" (R&R at 9, quoting Plaintiff's Memorandum of Law at 27), our January 16, 2007 letter (Docket No. 37), clearly states:

> The fundamental premise of Attorney Lang's legal argument in her improper letter is a red herring and false. Thus, **she states that "Plaintiff's position is that the proposal and the application, in and of themselves, create a contract of insurance." Lang**

The Magistrate's discussion of the Application, however, fails to recognize that under the unambiguous terms of the Policy it constitutes part of the insurance contract. Thus, the cases and authorities cited by the Magistrate for the proposition that the Application "is merely an offer to enter into a contract," and that the Application "is merely an ex parte offer *** to purchase a contract of insurance, not an insurance contract" are not applicable here. R&& at 9, 10, citing and quoting *Smith v. Colonial Ins. Co. of Calif.*, 515 S.E.2d 775, 777 (Va. 1999); *Peoples Life Ins. Co. v. Parker*, 20 S.E.2d 485, 487 (Va. 1942); *Connolly v. Prudential Ins. Co.*, 610 F.2d 1215, 1218-1219 (4th Cir. 1979); *Hayes v. Durham Life Ins. Co.*, 96 S.E.2d 109, 111 (Va. 1957).[7] Thus, the critical language in the Application under the heading **"FOR HOME OFFICE USE**

---

> **Letter at p. 1. She made this very same argument at oral argument, and I countered at the start of my argument that this assertion was false and designed to draw the Court's attention away from the undisputed fact that according to the language of the Policy issued by MML to McGill the applicable Policy in this case consists of the Policy and the Application.** Thus, as I pointed out at argument, the Policy states that "This policy and the copy of your application attached to it contain the entire contract between you and us." MML Statement of Undisputed Facts ("SUF") Exh. "D", at p. 8 (page 13 of 15 legend at top). It appears that Attorney Lang purposely separated the Policy and the Application (SUF, Exh. "F") in her submission notwithstanding that they constitute the Policy in this case because it destroys her straw-man argument that McGill relies on the proposal (Term Sheet) and the Application as the Policy.

McGill's January 16th letter was submitted pursuant to the Magistrate's Order of January 9, 2007 (Docket No. 36), which found MML's January 4, 2007 letter to be an "improper surreply memorandum filed without leave of court," but which denied McGill's request that the letter be rejected and directed McGill to submit any response within seven days. MML counsel's January 4, 2007 letter is not reflected in the Docket for this case.

7 Thus, the applications for insurance in each of these cases do not contain the critical language found in MML's Application under the heading "**FOR HOME OFFICE USE ONLY**". In addition, McGill's Application specifically provides that the "benefit period" and "own occupation period" is age "65". MML Ex. F. None of the applications at issue in the cases cited and relied on by the Magistrate and MML contain this language. In fact, MML points to no cases interpreting this language in its own standard disability insurance application.

**ONLY,"** which requires that McGill "accept" the policy to "ratify" MML's material changes in McGill's coverage from a benefit period and own occupation period to age 65 to five years for both, must be considered part of the insurance contract and considered equally with the language in the Policy to determine whether there is an ambiguity in the benefit term and own occupation term and whether there are any material questions of fact for trial under Virginia law.

The Magistrate correctly found that "MML does not point to any express acceptance by [McGill] of the policy with the five-year limitation" and that McGill "may be correct" that "there is a question of fact as to whether he accepted the policy revisions noted by MML on the Application." R&R at 12. Based on the critical language of the Application noted above and Virginia law, however, the Magistrate incorrectly concluded that "there is no evidence in the record that MML ever accepted the terms of [McGill]'s offer [Application]" (R&R at 12), and that "[t]here is simply no evidence in the record that MML ever accepted Plaintiff's application for disability insurance through age sixty-five." R&R at 13. In short, there is at least a material question of fact on this issue that requires a trial in this case.

As we noted at oral argument and in our January 16, 2007 letter, Virginia has various statutes that apply to an "individual accident and sickness policy," which includes MML's LTD Policy issued to McGill. *See* Va. Code Ann. § 38.2-109(A) ("''Accident and sickness insurance" means insurance against loss resulting from sickness, or from bodily injury or death by accident or accidental means, or from a combination of any or all of these perils."); *In re Neal,* 344 B.R. 456, 460-461 (W.D.Va. 2004) (a disability policy that pays benefits "for so long as the insured person continues to meet the definition of disability contained in the policy, not to exceed the insured's 65th birthday or his or her death *** clearly comes within the statutory definition of

'accident and sickness 461 insurance' " under Va.Code § 38.2-109.).[8] As noted to the Magistrate, Va. Code Ann. § 38.2-3501 provides, in relevant part, as follows:

> §38.2-3501. Notice to be printed on policy; return of policy to insurer
>
> A. Any individual accident and sickness insurance policy delivered or issued for delivery in this Commonwealth shall have printed on it a notice stating substantially:
>
> ***
>
> **"RIGHT TO RETURN POLICY WITHIN 10 DAYS. If for any reason you are not satisfied with your policy, you may return this policy to the Company within ten days of the date you received it and the premium you paid will be promptly refunded."**
>
> B. If a policyowner returns the policy within ten days from the date of receipt, coverage under that policy shall become void from its inception upon the mailing or delivery of the policy to the insurer or its agent.

This provision clearly indicates that under Virginia law an insured like McGill must have the Policy delivered to him and must be given the right to inspect and return the Policy within 10 days. Because the MML Policy was never delivered to McGill – or at least there is a question of fact on that issue – he could not have exercised this right. Moreover, the MML Policy fails to contain this required language advising McGill of this right under Virginia law.

Thus, as we asserted before the Magistrate – at oral argument and in our January 16, 2007 letter – McGill could not "accept" the Policy and thus "ratify" the changes made by MML in the

8 Copies of the Virginia statutes discussed herein are attached as an Appendix for the convenience of the Court.

"FOR HOME OFFICE USE ONLY" portion of the Application because the Policy was never delivered to him.[9]

More importantly, Virginia law also requires that the material changes in coverage made by MML in the Application and in the Policy from what was presented to McGill by MML's agent, Johnson, in the Application that McGill signed on May 12, 1992 must be approved in writing by McGill before they can take effect. Thus, Va. Code Ann. §38.2-3511 provides:

> §38.2-3511 Application
>
> A. The insured shall not be bound by any statement made in an application for an individual accident and sickness policy unless a copy of the application is attached to or endorsed on the policy when issued as a part of the policy. If any such policy delivered or issued for delivery in this Commonwealth is reinstated or renewed, and the insured, beneficiary or assignee of the policy makes a written request to the insurer for a copy of the reinstatement or renewal application, if any, the insurer shall within fifteen days after the receipt of the request, deliver or mail to the person making the request, a copy of the application. If a copy is not so delivered or mailed, the insurer shall be precluded from introducing the application as evidence in any action or proceeding based upon or involving the policy or its reinstatement or renewal.
>
> B. **No alteration of any written application for any such policy shall be made by any person other than the applicant without his written consent, except that insertions may be made by the insurer, for administrative purposes only, in a manner indicating clearly that such insertions are not to be ascribed to the applicant.**
>
> C. The falsity of any statement in the application for any policy covered by this article may not bar the right to recovery under the policy unless the false statement materially affected

---

9 Johnson, MML's authorized agent, testified as one point in his deposition that he delivered the Policy to McGill, but after reviewing MML's Individual Claim Memoranda he retreated completely from this statement and testified that he did not recall who he physically delivered or gave McGill's policy to. McGill Ex. 6 at pp. 36-37, 87. Wolf, MML's Senior Claims Examiner handling McGill's claim, testified that Johnson told her that he delivered McGill's Policy to Mickey Doyle. McGill Ex. 7 at p. 81.

> either the acceptance of the risk of the hazard assumed by the insurer.

Thus, the material changes made by MML in the Application and the Policy – changing the maximum benefit period and the own occupation period from age 65 to five years cannot, under this Virginia statute, become part of the insurance contract without McGill's written consent. Clearly, there is no evidence in the record of McGill's written consent to these changes.[10]

In addition, although the Magistrate did not accept MML's "ratification" argument, this statute precludes any such argument. As the Magistrate noted, "[a]lthough MML does not point to any express acceptance by [McGill] of the policy with the five-year limitation, it argues that [McGill] ratified the July 2, 1992 policy as issued by filing a claim under its terms and accepting benefits thereunder." R&R at 12. Thus, in its January 4, 2007 letter, MML argued, contrary to Va. Code Ann. 38.2-3511(B), that McGill "still had the opportunity to reject the limited coverage" when he found the Policy in the Interflex HR Director's office in October 1995 and that he "elected *** to file a claim for benefits, and accept payment of the benefits available under the terms of the limited benefit disability insurance policy *** thus ratifying the policy as issued."[11]

---

10 We did not locate this statute until after receipt of the R&R. Nonetheless, since it is applicable law, it may be considered by the Court now. Our research has found only two cases that have cited or applied Va. Code Ann. § 38.2-3511, and they only cited and/or applied subdivision (C), rather than subdivision (B), which is relevant here. *See Beard v. TMG Life Ins. Co.*, 1992 U.S. App. LEXIS 15561 (4th Cir. 1992); *Breault v. Berkshire Life Ins. Co.*, 821 F.Supp. 410, 414 n. 5 (E.D. Va. 1993).

11 It should be noted that from a factual standpoint, when McGill made his claim in November 1995 he had no personal knowledge that the Application and Policy had been changed from what was presented to him in May 1992, and had no choice but to make the claim since he was already disabled – he was diagnosed with severe sleep apnea in April 1994 and filed for disability in November 1995. McGill Decl. ¶¶ 18-20. It was too late to get another LTD policy to supplement or replace the MML Policy.

Notably, the critical language from the Application provides that for certain states important changes made by the Home Office had to be "agreed to in writing" by the insured. Thus, it states that "Acceptance of the policy shall ratify changes entered here by Minnesota Mutual Life. Not to be used in CA (for Disability only), IA, IL, KS, KY, MD, MI, MO, NH, NJ, OR, PA, TX, WI or WV for change in age, amount, classification, plan or benefits unless agreed to in writing." It is clear that under Va. Code Ann. § 38.2-3511(B) Virginia should have been added to this list. Neither Johnson nor Wolf knew whether MML required an insured like McGill to approve, agree to or consent to an amended policy after it was modified from Johnson's presentation to McGill and his acceptance of it and the changes made by MML's Underwriting Department. McGill Ex. 6 at 35-36 (Johnson); McGill Ex. **7** at 76-78 (Wolf). Significantly, MML chose not to submit any affidavits of its own employees or any evidence addressing this issue on its summary judgment motion.[12]

The inclusion of New Jersey and Pennsylvania on the list of states in MML's Application where the insured's consent to any Home Office changes is required is significant as well. It is established law in both jurisdictions that

> This is not to say that insurance contracts are to be reviewed in a vacuum or without regard to the factual context in which the claim arose. Rather, courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled. Regardless of the ambiguity (or lack thereof) inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, etc.), the public has a right to expect that they will receive something of

---

[12] Notably, MML's motion for summary judgment was not supported by a single factual affidavit or declaration from an MML employee or former employee. Moreover, notwithstanding that an extensive deposition was taken of Cheryl Wolf, MML's senior claims examiner assigned to handle McGill's claim, MML has not supported its motion with even a single page from her deposition. Many of the factual issues that exist in this case could and should be addressed by employees or former employees of MML with personal knowledge of the underwriting of the MML Policy, but MML has chosen not to submit any such evidence.

> comparable value in return for the premium paid. *Tonkovic v. State Farm Mutual Automobile Insurance Co.*, 513 Pa. 445, 456, 521 A.2d 920, 926 (1987). *See also Prudential Property and Casualty Ins. Co. v. Swindal* and *Lindheimer v. St. Paul Fire and Marine Insurance Co.*, both *supra*. Thus, **where an individual applies and pays for specific insurance coverage, the insurer may not unilaterally change the coverage or issue a policy differing from what the insured requested and paid for without affirmatively showing that the insured was notified of, and understood the change, regardless of whether the insured read the policy.** *Tonkovic*, 513 Pa. at 455, 521 A.2d at 925. The burden is not on the insured to read the policy to discover such changes or not read it at his peril. *Tonkovic*, 513 Pa. at 454, 521 A.2d at 925. *In accord, Meier v. New Jersey Life Insurance Co.*, 101 N.J. 597, 612, 503 A.2d 862, 869 (1986); *Di Orio v. New Jersey Manufacturers Ins. Co.*, 79 N.J. 257, 269- 270, 398 A.2d 1274 (1979); *Allen v. Metropolitan Life Ins. Co.*, 44 N.J. 294, 208 A.2d 638 (1965); *Von Milbacher v. Teachers Insurance and Annuity Ass'n.*, 1988 WL 113353 (D.N.J.1988) at *2 (an insurance agreement subject to conflicting reasonable interpretations will be enforced according to that understanding which favors the insured and for the purpose of rendering a fair interpretation of the boundaries of insurance coverage).

*Benevento v. Life USA Holding, Inc.*, 61 F.Supp.2d 407, 418 (E.D.Pa.1999) (applying the laws of New Jersey, Pennsylvania, and Florida in denying defendants' motion for summary judgment).

Thus, MML's changes – from age 65 coverage with an age 65 own occupation period to a five year benefit and own occupation period – were never consented to by McGill and did not become part of the Policy. MML argued to the Magistrate that this would mean there never was any Policy and that McGill should return the five years of benefits it paid him minus the premiums paid for the Policy. That is not the case under Virginia law.

Thus, Virginia has two other relevant statutory provisions that are applicable to the breach of contract claim here, as follows:

> §38.2-318. Validity of noncomplying forms

A. Any insurance policy or **form** containing any condition or provision that is not in compliance with this title shall be valid, but shall be construed and applied in accordance with the conditions and provisions required by this title.

B. As used in this section, **"form" means any** contract, rider, endorsement, amendment, certificate, or **application or other instrument providing, modifying, or eliminating insurance coverage**. (emphasis supplied)

§ 38.2-319. Validity of contracts in violation of law

Any insurance contract made in violation of the laws of this Commonwealth may be enforced against the insurer.[13]

Because MML's changes were not accepted, they did not become part of the Policy, but the insurance contract between McGill and MML is still enforceable against MML under these Virginia statutes. Neither the Application nor these applicable Virginia statutes state that if the Home Office changes are "accepted" – the language of the Application – by the insured or approved by the insured's "written consent" – the language of section 38.2-3511(B) – that the Policy is void. Rather, notwithstanding the MML's Application and Policy violates Virginia law, the insurance contract is "valid, but shall be construed and applied in accordance with the conditions and provisions required by" Virginia law (§ 38.2-318) and may be "enforced against the insurer" (§ 38.2-319). Thus, only the Home Office changes do not become part of the insurance contract.

For MML to argue that because it violated Virginia law by failing to give McGill notice of his right to review the policy and reject it within 10 days from its delivery – and thus the requirement that the Policy actually be delivered to him – and by failing to obtain his written consent to the Home Office changes should void the Policy and enable it to a return of the five

[13] *See* footnote 10, *supra*.

years worth of benefits paid minus the premiums paid turns Va. Code Ann. § 38.2-3511(B) on its head. Under this analysis, MML would benefit from its violation of this statute requiring McGill's written consent to MML's material changes, despite the fact that McGill never knew of the changes and was denied his right under Virginia law to have the policy delivered to him and to review and reject it within 10 days. *See* Va. Code Ann. § 38.2-3501(A). Under MML's proposed resolution, it never loses and has to pay for its own misconduct – the Policy is either limited to the improperly reduced benefit period, or there never was a contract and MML never has to pay or is entitled to recover what it has paid. Although there are no cases applying or construing section 38.2-3511(B), this could not have been the intended result of the Virginia Legislature.[14]

If MML wanted to protect itself from the fact that it is now bound by an insurance contract that contains different terms from what it wanted, it need only (1) make sure that it issued an Application and Policy in compliance with Virginia law; and (2) make sure that its agent, Johnson, delivers the Policy to McGill and obtain his written consent to the Home Office changes as required, which is proof of delivery as well; or (3) not issue the Policy.[15]

---

14 In rejecting McGill's attorney's request for the maximum benefit period to be to age 65 rather than five years in letter dated January 20, 1997, MML relied on a "constructive delivery" argument. The letter states that "[a]s [MML] received the increased premium as acceptance of its counteroffer, we consider the modified policy to have been constructively delivered." McGill Ex. 22. Wolf did not know the meaning of the phrase "constructive delivery" even though this letter was signed by her. The letter also stated that McGill had knowledge of the policy modification, but Wolf admitted that her June 3, 1996 Claim Memoranda notes state that based on her telephone conversation with McGill he had no knowledge of the policy modification. *Id.* at 105.

15 MML's "Policy Delivery Instructions" (McGill Ex. 8) specifically requires that the agent deliver the Policy to the insured. Wolf did not know if the agent in this case followed any of these instructions. McGill Ex. 7 at 52.

At the very least there is an ambiguity between the terms set forth in the Policy document and the Application regarding the maximum benefit and own occupation periods, and it is established law in Virginia that "an insurance policy which contains an ambiguity must be liberally construed in favor of the insured." *Inter-State Assurance Co. v. Condon*, 1987 WL 12746 at *3 (E.D. Va. 1987); *see Lincoln Nat'l. Life Ins. Co. v. Commonwealth Corrugated Container Corp*., 327 S.E.2d 98 (Va. 1985); *First Am. Title Ins. Co. v. Seaboard Sav. & Loan Ass'n*, 315 S.E.2d 842 (Va. 1984). "An insurance policy is ambiguous when it can reasonably be interpreted in more than one way. *** Where an insurance policy 'is susceptible of two constructions, one of which would effect coverage and the other would not, the court will adopt that construction which will afford coverage.' " *Condon, supra,* 1987 WL 12746 at *3, quoting *Lincoln Nat'l. supra,* 327 S.E. at 101. As stated by the Court in *National Independent Coal Operators Ass'n, Inc. v. Republic Ins. Co.*, 554 F.Supp 520, 525-526 (W.D. Va. 1982):

> In determining whether an ambiguity exists, "it is a well established 'general principle' of insurance law that in construing a contract of insurance the test is not what the insurer intended the policy to mean, but what a reasonable person in the position of the named insured would have understood it to mean." *United States Fidelity and Guaranty Co. v. Drinkard*, 258 F.Supp. 380, 381 (W.D.Va.), *supplementing* 254 F.Supp. 867 (W.D.Va.1966) ***. Finally, any ambiguity in the policy is strictly construed against the insurance company and where there is room for different interpretations, the interpretation that is most favorable to the insured will be adopted. *** *Ayres v. Harleysville Mut. Cas. Co.*, 2 S.E.2d 303, 305-06 (Va. 1939).

In conclusion, based on the critical language of the Application and Virginia law the Magistrate incorrectly concluded – albeit that he did not have the benefit of several Virginia statutes discussed herein – in concluding that "there is no evidence in the record that MML ever accepted the terms of [McGill]'s offer [Application]" (R&R at 12), and that "[t]here is simply no evidence in the record that MML ever accepted Plaintiff's application for disability insurance

through age sixty-five." R&R at 13. In short, there is at least a material question of fact on this issue that requires a trial in this case. Finally, we have now supplied the missing Virginia law that the Magistrate found was not provided to demonstrate at least a question of fact on the breach of contract claim.[16]

## CONCLUSION

For all the foregoing reasons, and based upon all of the motion papers and oral argument presented to the Court, we respectfully request that this Court issue an Order rejecting the Report and Recommendation of the Magistrate and denying MML's motion for summary judgment, together with such other and further relief as to the Court seems just and equitable.

Dated: February 1, 2007

Respectfully Submitted:

*Counsel for Plaintiff*

By: **/s/ Alan J. Pierce**
Alan J. Pierce, Esq.

HANCOCK & ESTABROOK LLP
1500 Tower I, P.O. Box 4976
Syracuse, New York 13221-4976
Tel: (315) 471-3151

COIA & LEPORE
Jessica L. Basso, Esq.
226 South Main Street
Providence, RI 02903
Tel: (401) 751-5522

[16] Thus, the Magistrate wrote: "Plaintiff cites no Virginia law supporting his position that MML is bound to give him the policy applied for because he never accepted the changes proposed by MML in its counter-offer. Further, Plaintiff cites no Virginia law holding that either MML's alleged failure to properly deliver the policy to him or the assurances allegedly made by Johnson that his policy was issued "without a hitch" bound MML to accept Plaintiff's Application as offered by him." *Id.* at 13.

LEXSTAT VA CODE ANN 38.2-109

CODE OF VIRGINIA
Copyright (c) 2006 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** CURRENT THROUGH THE 2006 REGULAR SESSION, Acts 2006, cc. 1 to 947, and 2006 SP. SESS. I, cc. 1 to 10 ***
*** ***
*** ANNOTATIONS CURRENT THROUGH June 1, 2006 ***

TITLE 38.2. INSURANCE
CHAPTER 1. GENERAL PROVISIONS
ARTICLE 2. INSURANCE CLASSIFIED AND DEFINED

**GO TO CODE OF VIRGINIA ARCHIVE DIRECTORY**

*Va. Code Ann. § 38.2-109* (2006)

§ 38.2-109. Accident and sickness

A. *"Accident and sickness insurance"* means insurance against loss resulting from sickness, or from bodily injury or death by accident or accidental means, or from a combination of any or all of these perils. As used in this title, unless the context requires otherwise, the term "accident and sickness insurance" shall be deemed to include "credit accident and sickness insurance."

B. The term "accident and sickness insurance" shall also include agreements insuring against losses resulting from health care claims or expenses of health care in excess of a specific or aggregate dollar amount, when such agreements are used to provide coverage to (i) an employee welfare benefit plan or any other plan providing accident and sickness benefits, (ii) a health maintenance organization, or (iii) a provider associated with a managed care network, provided:

1. The agreement clearly discloses the extent and duration of the liability assumed by the insurer once the policyholder's liability has been exceeded; and

2. The insurer maintains reserves in accordance with *§ 38.2-1314* for the liability it assumes under the agreement.

Such agreements shall not be subject to the requirements of Chapters 34 (*§ 38.2-3400* et seq.) and 35 (*§ 38.2-3500* et seq.) of this title.

**HISTORY:** 1952, c. 317, § 38.1-5; 1986, c. 562; 1997, c. 28.

"ACCIDENT" DEFINED. --An accident is an event that takes place without one's foresight or expectation, an undesigned, sudden, and unexpected event; further, it is generally held that if the in-

sured voluntarily provokes or is the aggressor in an encounter, and knows, or under the circumstances should reasonably anticipate, that he will be in danger of death or great bodily harm as the natural or probable consequence of his act or course of action, his death or injury is not caused by an accident within the meaning of such a policy. *Harris v. Bankers Life & Cas. Co., 222 Va. 45, 278 S.E.2d 809 (1981).*

DIFFERENCE BETWEEN LIFE AND ACCIDENT INSURANCE. --It is apparent that life insurance means insurance against death regardless of cause. It is equally apparent that accident and sickness insurance means insurance against death caused only by accident or, where the policy so provides, by accident or sickness, or both. *Gudnason v. Life Ins. Co. of N. Am., 231 Va. 197, 343 S.E.2d 54 (1986).*

ISSUE OF ACCIDENT IMPROPERLY DECIDED BY COURT. --In an action claiming that defendant insurance company breached a contract insuring plaintiff's husband against accidental death or dismemberment, where evidence showed that the husband was stabbed to death by another woman with whom he lived after the husband had disciplined the woman's child and pushed the woman, the trial court erred in deciding as a matter of law that the husband's death was not an accident, since whether the husband should have anticipated that his disciplining the child or his pushing the woman would lead to a violent reaction presented a factual issue dependent on the relationship of the parties and the circumstances of the incident. *Harris v. Bankers Life & Cas. Co., 222 Va. 45, 278 S.E.2d 809 (1981).*

LEXSTAT VA CODE ANN 38.2-318

CODE OF VIRGINIA
Copyright (c) 2006 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** CURRENT THROUGH THE 2006 REGULAR SESSION, Acts 2006, cc. 1 to 947, and 2006 SP. SESS. I, cc. 1 to 10 ***
*** ***
*** ANNOTATIONS CURRENT THROUGH June 1, 2006 ***

TITLE 38.2. INSURANCE
CHAPTER 3. PROVISIONS RELATING TO INSURANCE POLICIES AND CONTRACTS

**GO TO CODE OF VIRGINIA ARCHIVE DIRECTORY**

*Va. Code Ann. § 38.2-318* (2006)

§ 38.2-318. Validity of noncomplying forms

A. Any insurance policy or form containing any condition or provision that is not in compliance with this title shall be valid, but shall be construed and applied in accordance with the conditions and provisions required by this title.

B. As used in this section, *"form"* means any contract, rider, endorsement, amendment, certificate, or application or other instrument providing, modifying, or eliminating insurance coverage.

**HISTORY:** 1952, c. 317, § 38.1-343; 1986, c. 562.

STATUTORY PROVISIONS SUPERSEDE INCONSISTENT POLICY PROVISIONS. --If the terms of the policy are inconsistent with statutory provisions, the statutory provisions supersede the inconsistent policy terms. *USAA Cas. Ins. Co. v. Yaconiello, 226 Va. 423, 309 S.E.2d 324 (1983).*

SUPERSEDING PROVISION TAKES EFFECT ONLY IF POLICY RESTRICTS COVERAGE. --Where minor was passenger on uninsured moped which collided with truck, where insurance policy defined uninsured motor vehicle as motor vehicle which lacked effective protection by insurance coverage, and where insurer pointed out that former § 46.1-1(15) (now *§ 46.2-100*) specifically excluded bicycles and mopeds from definition of term motor vehicle, moped was motor vehicle within terms of uninsured motorist coverage because insurer's policy afforded broader coverage and there is no prohibition against insurer offering broader coverage than minimum prescribed by law; superseding provisions of *§ 38.2-318* take effect only where insurer seeks, by policy language, to narrow, avoid, vary or restrict coverage legislature has required. *Hill v. State Farm Mut. Auto. Ins. Co., 237 Va. 148, 375 S.E.2d 727 (1989).*

LEXSTAT VA CODE ANN 38.2-319

CODE OF VIRGINIA
Copyright (c) 2006 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** CURRENT THROUGH THE 2006 REGULAR SESSION, Acts 2006, cc. 1 to 947, and 2006 SP. SESS. I, cc. 1 to 10 ***
*** ***
*** ANNOTATIONS CURRENT THROUGH June 1, 2006 ***

TITLE 38.2. INSURANCE
CHAPTER 3. PROVISIONS RELATING TO INSURANCE POLICIES AND CONTRACTS

**GO TO CODE OF VIRGINIA ARCHIVE DIRECTORY**

*Va. Code Ann. § 38.2-319* (2006)

§ 38.2-319. Validity of contracts in violation of law

Any insurance contract made in violation of the laws of this Commonwealth may be enforced against the insurer.

**HISTORY:** Code 1950, § § 38-32, 38-223; 1952, c. 317, § 38.1-344; 1986, c. 562.

**NOTES:**
LAW REVIEW. --For 2000 survey of Virginia insurance law, see *34 U. Rich. L. Rev. 883 (2000).*

LEXSTAT VA CODE ANN 38.2-3501

CODE OF VIRGINIA
Copyright (c) 2006 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** CURRENT THROUGH THE 2006 REGULAR SESSION, Acts 2006, cc. 1 to 947, and 2006 SP. SESS. I, cc. 1 to 10 ***
*** ***

*** ANNOTATIONS CURRENT THROUGH June 1, 2006 ***

TITLE 38.2. INSURANCE
CHAPTER 35. ACCIDENT AND SICKNESS INSURANCE POLICIES
ARTICLE 1. INDIVIDUAL ACCIDENT AND SICKNESS INSURANCE POLICIES

**GO TO CODE OF VIRGINIA ARCHIVE DIRECTORY**

*Va. Code Ann. § 38.2-3501* (2006)

§ 38.2-3501. Policy forms; powers of Commission

Individual accident and sickness insurance policy forms and the rate manuals showing rules and classification of risks applicable to individual accident and sickness insurance policy forms shall be subject to the provisions of *§ 38.2-316*. The Commission, subject to *§ 38.2-316*, may disapprove or withdraw approval of any such policy form if it finds that the benefits provided in the policy form are or are likely to be unreasonable in relation to the premium charged. If the Commission disapproves a policy form or withdraws approval of a form, an insurer may proceed as indicated in *§ 38.2-1926*.

**HISTORY:** 1979, c. 726, § 38.1-362.8; 1986, c. 562.

LEXSTAT VA CODE ANN 38.2-3511

CODE OF VIRGINIA
Copyright (c) 2006 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** CURRENT THROUGH THE 2006 REGULAR SESSION, Acts 2006, cc. 1 to 947, and 2006 SP. SESS. I, cc. 1 to 10 ***
*** ***
*** ANNOTATIONS CURRENT THROUGH June 1, 2006 ***

TITLE 38.2. INSURANCE
CHAPTER 35. ACCIDENT AND SICKNESS INSURANCE POLICIES
ARTICLE 1. INDIVIDUAL ACCIDENT AND SICKNESS INSURANCE POLICIES

**GO TO CODE OF VIRGINIA ARCHIVE DIRECTORY**

*Va. Code Ann. § 38.2-3511* (2006)

§ 38.2-3511. Application

A. The insured shall not be bound by any statement made in an application for an individual accident and sickness policy unless a copy of the application is attached to or endorsed on the policy when issued as a part of the policy. If any such policy delivered or issued for delivery in this Commonwealth is reinstated or renewed, and the insured, beneficiary or assignee of the policy makes a written request to the insurer for a copy of the reinstatement or renewal application, if any, the insurer shall within fifteen days after the receipt of the request, deliver or mail to the person making the request, a copy of the application. If a copy is not so delivered or mailed, the insurer shall be precluded from introducing the application as evidence in any action or proceeding based upon or involving the policy or its reinstatement or renewal.

B. No alteration of any written application for any such policy shall be made by any person other than the applicant without his written consent, except that insertions may be made by the insurer, for administrative purposes only, in a manner indicating clearly that such insertions are not to be ascribed to the applicant.

C. The falsity of any statement in the application for any policy covered by this article may not bar the right to recovery under the policy unless the false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

**HISTORY:** 1952, c. 317, § 38.1-357; 1986, c. 562.