UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN L. McGILL, Plaintiff, | ) | CIVIL ACTION NO.: |
| -vs- | ) | 05-CV-0481/S |
| MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Defendant. | ) | |

**REPLY MEMORANDUM OF LAW ON BEHALF OF PLAINTIFF JOHN L. McGILL IN FURTHER SUPPORT OF OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## INTRODUCTION

This Reply Memorandum of Law is submitted by Plaintiff John L. McGill ("McGill") in further support of his objections to the Report & Recommendation ("R&R") of Magistrate Judge Lincoln Almond ("the Magistrate") to grant the motion for summary judgment herein by Defendant Minnesota Mutual Life Insurance Company ("MML") and in reply to MML's Memorandum of Law.

## ARGUMENT

### THERE ARE MATERIAL QUESTIONS OF FACT UNDER VIRGINIA LAW THAT REQUIRE A TRIAL OF MCGILL'S BREACH OF CONTRACT CAUSE OF ACTION

This Reply Memorandum of Law will respond directly to each of the arguments set forth in MML's Opposition Memorandum of Law ("Opposition Memorandum").

**First**, MML argues, at pages 2-3, is that McGill misrepresented the terms of the MML Policy. Consistent with its past history, MML misconstrues McGill's primary argument in order to direct the Court's attention away from it because MML cannot rebut McGill's principal argument. Thus, MML claims that McGill asserts that MML violated Virginia Code § 38.2-3502(A)[1] because the policy does not provide written notice of a "free look". McGill's argument regarding Section 38.2-3502, however, is that although the MML Policy does contain the notice of McGill's right to examine the policy for at least 10 days, McGill could not exercise his right under Section 38.2-3502(A) of his right to return the MML policy within 10 days if he was not satisfied with it because the policy was never delivered to McGill. Thus, on page 13 of McGill's Memorandum of Law states: "Because the MML Policy was never delivered to McGill – or at least there is a question of fact on that issue – he could not have exercised this right." The Opposition Memorandum never addresses this or rebuts it.

MML is correct that the Policy insuring McGill contains at least the 10 day notice of the right to examine and return the policy and therefore does not violate Section 38.2-3502 on its face. MML is incorrect, however, in asserting that it is McGill's argument that the mere violation of the statute requires that the Policy issued by MML insuring McGill must be "reformed." Throughout MML's opposition it constantly refers to McGill's claim for "reformation" of the Policy or that the Policy must be "reformed."[2] McGill has never asked this Court to reform the MML Policy insuring him. The claim at issue is a breach of contract claim

---

1 McGill's Memorandum of L:aw ("McGill's MOL") in support of his Objections incorrectly referred to this provision as Va. Code Ann. § 38.2-3501 rather than §38.2-3502. Thus, the provision cited to the Court by McGill in its Memorandum of Law should be Section 38.2-3502. A copy of both sections found in the bound Code of Virginia are attached hereto as part of an Appendix. MML's opposition asserts that true copies of both statutes are attached to it as Exhibit A, but there is no Exhibit A to the Memorandum of Law served on McGill's counsel.

2 *See* Opposition Memorandum at pp. 3, 4, 7, 9.

for McGill's damages. The central issue on this motion for summary judgment is what are the terms of the LTD Policy issued by MML to McGill and insuring him for disability, i.e. whether policy has a 5 year benefit and own occupation period or a benefit period and own occupation period to age 65.

**Second,** MML argues at pages 3-4 of the Opposition Memorandum, that Virginia law does not require physical delivery of the policy. While this statement may be technically true in the context of the automobile liability policy cases cited by MML in support of this proposition, it is wholly irrelevant to the LTD Policy and issues presented to this Court in this case. The two cases cited by MML both involve automobile policies where there was no dispute about the terms of the policies. Neither case involved an accident and sickness policy (LTD policy) that by its terms contains a right of the policyholder to examine the policy and return it within 15 days of its "receipt." Nor were the cases governed by the provisions of Virginia law cited by McGill that create special rights in the policyholder of an accident and sickness policy, such as the MML Policy issued to McGill, including the statute prohibiting the insurer from altering the material terms of the policy application unless the changes have been consented to in writing by the policyholder. *See* Va. Code Ann. 38.2-3511(B). In short, if this case involved an automobile liability policy where the only issue was the effectiveness of the policy, and not its terms, the cases cited by MML might be relevant. Insofar as those are the not the facts of this case or the issues presented before this Court, the cases are simply not relevant.

In addition, MML uses this portion of its Opposition to address an issue briefed and argued before Magistrate Almond, but not addressed in his R&R, specifically whether the LTD Policy issued by MML to McGill is governed by ERISA. Specifically, MML points to the facts that the Policy was delivered to McGill's employer, the employer initially paid for the premiums

and then issued a 1099 to McGill, and that the Policy contains language that the premium was based on a "reduced employee group-preferred occupational rate" to conclude that the Policy is governed by ERISA and therefore summary judgment is appropriate. We acknowledged before the Magistrate Judge that if this Policy is governed by ERISA, McGill's claims would be subject to dismissal. For numerous reasons discussed before the Magistrate Judge, however, McGill asserts that this Policy is not governed by ERISA. We would welcome the opportunity to address those issues before this Court or again before the Magistrate Judge when this Court finds that the Magistrate Judge's R&R to grant summary judgment based on the lack of merits of the breach of contract cause of action is reversed and rejected.

In concluding this argument, MML asserts that "there is no requirement under Virginia law that defendant assure that the policy was physically delivered to the plaintiff * * * ." Opposition Memorandum at p.4. This statement is demonstratively false and contrary to MML's own requirements regarding McGill's LTD Policy. First, as acknowledged by MML, the Policy it issued to McGill states in the lower right hand corner of the cover page, that "if you are not satisfied, you may return the policy to us or to your agent within 15 days of its **receipt**, and you will receive a full refund of any premiums you have paid within 10 days of the date we receive your notice of cancellation." (emphasis supplied) It is certainly fair to say McGill cannot receive the policy unless it is delivered to him. Second, Virginia law requires that the policy be delivered to McGill because Va. Code Ann. § 38.2-3502(A) provides: "If for any reason you are not satisfied with your policy you may return this policy to the company within ten days of the date your **received** it and the premium you paid will be promptly refunded." (emphasis supplied) Third, the Application, which is part of the Policy, states under the heading "**FOR HOME OFFICE USE ONLY**" that "Acceptance of the Policy shall ratify changes entered here by

Minnesota Mutual Life." Again, McGill could not "accept" the Policy changes made by MML without delivery of the Policy to him.

**Third**, MML argues at pages 4-8 that McGill cannot use the Application to create an ambiguity in the Policy. Insofar as the Application is undeniably part of the Policy, any difference in the benefit terms provided between the Application as signed and agreed to by McGill and the Policy issued by MML would create an ambiguity unless the changes made by MML are invalid and unenforceable under Virginia law. Thus, McGill asserts that at the very least there is a question of fact because there is an ambiguity when the Court compares the terms agreed to by McGill in the Application and the terms listed in the Policy document issued by MML. Alternatively, it appears now under Virginia law that MML's purported changes in the benefit terms, from age 65 to 5 years, is invalid and unenforceable under Virginia law because it was not agreed to in writing by McGill. *See* Va. Code Ann. § 38.2-3511(B). The only way that MML would be entitled to summary judgment is if McGill had consented in writing to the changes made in the benefit term set forth in the Application by MML's Home Office and then the Policy would be unambiguous in favor of MML. However, those are not the facts and the governing law of this case.[3]

---

3 Federal Rule of Civil Procedure 56(a) provides that "[a] party seeking to recover upon a claim * * * may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." If counsel for McGill had found the statutory provisions first cited to this Court on the Objections to the R&R, specifically Va. Code Ann. §§ 38.2-3511(B), 38.2-318, and 38.2-319, earlier, we would have cross-moved for partial summary judgment on liability in favor of McGill.

Depending on how the Court resolves the other issues briefed and argued to the Magistrate Judge of ERISA and bankruptcy estoppel, we would request that this Court either grant McGill partial summary judgment or allow him to cross-move for such relief without additional submissions if the Court concludes that there are no material questions of fact on

MML's argument regarding how Virginia law defines the role of an application ignores the law governing MML's Policy issued to McGill, and the cases cited by MML are inopposite. *Hayes v. Durham Life Ins. Co.*, 96 S.E.2d 109 (Va. 1957), involved a claim on a life insurance policy that the Court held was never issued. The insured applied for a life insurance policy and took a medical exam, but he died of a heart attack a month after making the application and before the policy was issued. Here, it is undisputed that MML issued a Policy insuring McGill and the question before the Court is what are the terms of that Policy. Similarly, *Wright v. Pilot Life Ins. Co.*, 254 F. Supp. 1018 (W.D.Va. 1966), *revd.* 379 F.2d 409 (4th Cir. 1967), also involved an action on a life insurance policy that the Court found was never issued, applying North Carolina law but relying on the Virginia Supreme Court's decision in *Hayes*. In *Wright*, the alleged insured applied for a life insurance policy and was told that a physical examination was necessary, but he never took the physical examination and no policy was issued. Similarly, MML's reliance on *Progressive Enterprises, Inc. v. New England Mut. Life Ins. Co.*, 538 F.2d 1057 (4th Cir. 1976), is misplaced. That action involved a life insurance policy where the issue was the effective date of the policy and the case was decided based on the clear and unambiguous language contained in the policy itself as to the effective date of the policy when the insurance company issued a policy on terms different than applied for by the insured. Again, the issue in the case was the effective date of the policy, not the terms of the policy and whether Virginia law required an insured to consent to material changes in the terms of the policy from those set forth in the application signed and accepted by the insured.

---

McGill's breach of contract cause of action because the material changes in coverage made by MML in the Application and contained in the Policy document are invalid and unenforceable.

MML's Opposition Memorandum (at page 5) contains the following argument: "For a carrier to be obligated to provide the coverage requested in the application simply because the application is attached to the resulting policy would circumvent the entire underwriting process, and compel insurers to determine whether and on what terms coverage may reasonably be offered in advance of the prospective insured submitting an application. This would be an absurd result, and a result that is neither contemplated nor sanctioned by Virginia law." Again, this argument is a red herring and not an argument that McGill has made. McGill does not argue that MML was obligated to provide him with the coverage that he applied for simply because he applied for it. MML was obligated under Virginia law, specifically Va. Code Ann. § 38.2-3511(B), to obtain McGill's written consent to the material changes that MML inserted in the Application after it was signed by McGill and not to simply issue a Policy to him with material changes in the terms of the coverage without obtaining his written consent. Because MML did not comply with this Virginia statute, it now is obligated, because it did issue a Policy insuring McGill, to provide the coverage applied for by McGill and not the altered coverage set forth in the Policy document. MML could have avoided this problem simply by either (1) obtaining McGill's written consent to the changes in coverage made by MML in the Application or (2) not issuing the Policy to McGill.

The "absurd" result is the one claimed by MML on page 6 of its Opposition Memorandum. Specifically, MML asserts that "defendant's rejection of the plaintiff's Application, as manifested by the issuance of a policy which does not provide the coverage requested by the plaintiff, in the context of plaintiff's declaration that he would have received the coverage offered by defendant, results in no coverage. *** Such a result necessitates that plaintiff repay to defendant the full five (5) years of benefits he received, with interest, and

defendant return to Interflex, plaintiff's former employer, the premiums it paid, with interest." (Footnote omitted) This argument again ignores Virginia law. Specifically, it ignores (1) Va. Code Ann. § 38.2-318, which provides that "any insurance policy or [application] containing any condition or provision that is not in compliance with this title shall be valid, but shall be construed and applied in accordance with the conditions and provisions required by this title," and (2) § 38.2-319, which provides that "any insurance contract made in violation of the law of this Commonwealth may be enforced against the insurer." MML's interpretation of the facts and governing law creates a "win-win" situation for it. If MML is correct on its interpretation it has no obligation to pay any further benefits to McGill. If McGill is correct on his interpretation, then according to MML no policy was ever entered into and McGill must repay the five years of benefits that he has received with interest less premiums paid plus interest, which is a substantial windfall for MML. Governing Virginia law not only does not require this result, it does not allow it under the undisputed facts of this case.

MML also argues that McGill accepted the material changes made by MML in the Home Office portion of the Application by implication, which it asserts is allowed under Virginia law. The case cited, *Aetna Cas. & Sur. Co. v. Harris*, 239 S.E.2d 84 (Va. 1977), is an action on a fire (property) policy, not an LTD or accident and sickness policy. Thus, the policy at issue in *Harris* was not subject to the special requirements of Va. Code Ann. § 38.2-3511(B) requiring that any material changes in coverage made in the Application must have the written consent of the insured to be valid and enforceable. Thus, the *Harris* case adds nothing to the issues before this Court. This Virginia statute clearly and unequivocally declares that acceptance by implication is not allowed with respect to changes in accident and sickness policies such as the LTD policy issued by MML insuring McGill. Accordingly, MML's argument that McGill

accepted the changes by implication because he located his policy for the first time approximately one month before he became disabled and filed for disability benefits in the fall of 1995 fails under governing Virginia law.[4]

Finally, with respect to this argument, MML simply does not understand and fails to recognize that the Application is part of the Policy issued to McGill in asserting that there cannot be any ambiguity in the Policy at page 8 of the Opposition Memorandum. While MML correctly points out the maximum benefit period of five years set forth on page 1A of the Policy, it completely ignores the Application – which MML has conveniently separated from the Policy and attached as Exh. "F" to its SUF despite the fact that it acknowledges that it is part of the Policy. The Application just as clearly and unambiguously sets forth that the "benefit period" is

---

4 MML not only stoops to repeatedly asserting that McGill seeks reformation of his policy, which is simply not true, it also resorts to distorting McGill's deposition testimony regarding how and when he found his MML policy for the first time in October 1995, more than three years after it was issued and became effective. Thus, the Opposition Memorandum (at page 7) states as follows: "Plaintiff admitted at deposition that he took physical possession of the policy in October, 1995, when he found it in the office of the wife of the Chairman of Interflex, while sneaking through papers he hoped would support claims against Interflex in shareholder litigation, once he learned that he was to be terminated." This statement is patently false and is designed to inflame and bias the Court against McGill. McGill's actual deposition testimony is as follows:

> I went looking for the minutes that were resolving that I could sell back my stock at fair market value because I was going to exercise my options and get out of dodge.
>
> I went looking for them in her office and I inadvertently came across a folder. I looked at the front page and it had my name on it, I thumbed through it, a term sheet popped out and it was the one that I had originally gotten from Mike Johnson, benefit to age 65, so I put it back in, put that thing in my pocket and kept looking for the minutes for the Board Meeting, that's how I came across it.

MML's Statement Of Undisputed Facts ("SUF"), Exhibit "A," at pp. 149-150.

McGill did not say: (1) he was "sneaking through papers," (2) he was looking for support for claims to be made in "shareholder litigation," and (3) he did not find the Policy "once he learned that he was to be terminated."

"65" and that the "own occupation" period is "to age 65 own occupation period." (SUF, Exh. F, at p.5) Insofar as the Application is part of the Policy, the language set forth at page 5 of the Application differs significantly from the language set forth on page 1A of the Policy, thereby creating an ambiguity **IF** the material changes made by MML after McGill signed the Application are not invalid under § 38.2-3511(B) because McGill did not give his written consent to this material change in benefit period. If the changes are invalid, as McGill asserts, then the Policy unambiguously provides for benefits to age 65.

**Fourth**, MML's argument against the application of Va. Code Ann. § 38.2-3511(B) is meritless and borders on the ridiculous. MML asserts that Section 38.2-3511(B) does not prohibit the underwriter from placing notes on the Policy Application, especially because the notes were placed on a portion of the Application stating "**FOR HOME OFFICE USE ONLY.**" This point is irrelevant. The statute does not prohibit changes by the insurer on the Application, but only that the changes must be consented to in writing by the insured to be effective. That is the issue before this Court because McGill did not consent in writing to the changes.

In addition, MML asserts that the underwriter's notes in the Application do not make a material change in coverage because they are consistent with the reduced coverage set forth on Page 1A of the Policy, i.e., a benefit period of five years and an own occupation period of five years rather than age 65 for both. This argument completely misses the mark of the Virginia statute. The statute prohibits alterations in the coverage provided by the Application without the insured's written consent. Therefore, comparing MML's changes in the Application – to which they did not obtain McGill's written consent – with the same changes in the Policy document that was issued, is not the correct comparison. Obviously, the statute prohibits exactly what MML did here changing the benefit period and own occupation period set forth in the

Application from age 65 to a five year benefit and own occupation period in the Home Office notes portion of the Application without McGill's written consent.

Finally, MML again asserts that McGill seeks "reformation of the policy" and that "the presence of the Underwriter's notes [do not] render the Policy language ambiguous." *Id.* at p.9. It is not the presence of the underwriter's notes that render the Policy ambiguous, it is the effect of Section 38.2-3511(B), which render those changes invalid and unenforceable, and thus leaves the Policy with a five year benefit period on Page 1(A) of the Policy and an age 65 benefit period on Page 5 of the Application (which is bound to and constitutes part of the Policy).

Unfortunately, there appear to be no Virginia cases or federal cases applying Virginia law that have interpreted Va. Code Ann. §§ 38.2-3511(B) and 38.2-319. The statutes, however, we submit are unambiguous and clear and must be applied to the undisputed facts of this case. Moreover, Virginia's requirement that the material changes made in an application for an accident and sickness policy must be consented to in writing by the insured in order to be valid and enforceable is not uncommon, but in fact numerous states have a virtually identical statutory provision in place. In fact, MML's application acknowledges this fact because the "**FOR HOME OFFICE USE ONLY**" section of the Application (SUF, Exh. F at p.7) states: "Acceptance of the policy shall ratify changes entered here by Minnesota Mutual Life. Not to be used in CA (For Disability Only), IA, IL, KS, KY, MD, MI, MN, MO, NH, NJ, OR, PA, TX, WI or WV for change in age, amount, classification, plan or benefits unless agreed to in writing."

MML asks this Court to disregard McGill's citation to *Benevento v. Life USA Holding, Inc.*, 61 F. Supp.2d 407 (E.D. Pa. 1999), as articulating the law of New Jersey and Pennsylvania (both states are found in MML's Application as requiring the insured's consent to changes by the Home Office) that "the insurer may not unilaterally change the coverage or issue a policy

differing from what the insured requested and paid for without affirmatively showing that the insured was notified of, and understood the change, regardless of whether the insured read the policy." *Id.* at 418. MML asserts that *Benevento* has not been adopted by the Supreme Court of Virginia and that "even the Supreme Court of Pennsylvania has not adopted the holding in *Benevento* to any factual scenario even remotely similar to the plaintiff's claims in this litigation." Opposition Memorandum at p.10. MML cites *Tonkovic v. State Farm Mut. Auto Ins. Co.*, 521 A.D.2d 920 (Pa. 1987) for this proposition. Unfortunately for MML, *Tonkovic* clearly and unequivocally supports *Benevento*, and in fact was cited by the court in *Benevento* as authority for its statement.

The *Tonkovic* Court stated that the issue presented by the appeal was whether the insured, Tonkovic, "is bound by an exclusionary clause in an insurance contract, where such clause was unilaterally inserted by *** State Farm ***, subsequent to [Tonkovic's] application and premium payment being accepted by [State Farm], through its agent, for disability insurance coverage without any exclusion; and where such exclusion was neither explained to, nor accepted by [Tonkovic]." *Id.* at 921. In resolving this issue the Court stated:

> We find a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for. When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made. The burden is not on the insured to read the policy to discover such changes, or not read it at his peril.

*Id.* at 925.

The Court specifically held that it was insignificant whether Tonkovic received the policy and failed to read it and the jury's verdict in his favor was upheld simply because Tonkovic "was

never made aware of the substantial discrepancy between the coverage for which he applied and that which the policy actually provided." *Id.* at 925. The court stated its holding as follows:

> We hold that where, as here, an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy. We note that this holding is in accord with our decision[s] *** recognizing the adhesionary nature of insurance transactions ***.

*Id.* at 925-926. The facts of this case read like a duplicate of the discussion in *Tonkovic*. Notably, Pennsylvania is one of the jurisdictions listed in MML's Application as requiring the written consent of the insured for any changes in the Home Office use portion of the Application.

MML cites two cases for the proposition that violation of a state statute prohibiting alteration of the application do not result in the invalidity of the altered coverage granted by the insurer. Neither case supports MML's argument and neither is relevant to the facts of this case.

*Daly v. Paul Revere Variable Annuity Ins. Co.*, 489 A.2d 1279 (N.J. 1984), involved the attempt of a life insurance beneficiary to avoid material misrepresentations made by the insured on a policy application simply on the grounds that the application taken by Paul Revere was originally for a disability policy, but when another insurer would not provide life insurance to the insured, Paul Revere issued a life insurance policy using the disability policy application. It was undisputed that the insured had materially misrepresented his health and medical condition on the application that he submitted to Paul Revere. Moreover, the life insurance beneficiary was simply seeking to prevent the application from being submitted in evidence because of a violation of a New Jersey statute providing no application would be admissible in evidence unless it was attached to the policy. *Id.* at 1279-1281. In *Daly*, the application was attached to the policy, but it was an application for disability insurance. The Court had little trouble rejecting this argument because "Paul Revere ha[d] complied with all of the New Jersey statutes

which require filing and approval of all form applications and policies." *Id.* at 1283. The beneficiary also sought to exclude the application from evidence on the basis of a New Jersey statute that is virtually identical to Va. Code Ann. § 38.2-3511(B), but it was undisputed that the insurer made no alterations or material changes in the coverage provided by the application when it made certain insertions in the Home Office use portion of the application. *Id.* at 1284. Thus, *Daly* is inapplicable to this case because the insurer did not materially alter the terms of the coverage to be provided in the application in the Home Office portion of the application.

Similarly, MML cites *Louisiana Commercial Bank v. Georgia International Life Ins. Co.*, 618 S.Op.2d 1091 (La. Ct. App. 1993), as rejecting "the proposition that the issuance of a policy at variance with the coverage applied for constitutes a prohibited alteration of the policy." Opposition Memorandum at p.10, fn.7. In that case, the insured, Baum, applied for $1.8 million in life insurance from the insurer. The insurer's chief underwriter testified that he agreed to issue a life insurance policy to Baum, but only if the coverage was reduced to $1 million and the policy contained an aviation exclusion. Baum accepted, in writing, the reduced coverage from $1.8 million to $1 million and paid the premium, but his acceptance made no reference to the aviation exclusion. After Baum died from injuries sustained in the crash of an airplane he was piloting, the insurer denied coverage to the named beneficiary on the basis of the aviation exclusion. *Id.* at 1093. The Louisiana Court of Appeals applied a state statute that is similar to § 38.2-3511(B) in that it requires that "any application for insurance in writing by the applicant shall be altered solely by the applicant or by his written consent, except that insertions may be made by the insurer for administrative purposes only ***." *Id.* at 1095.

The Court held that a contract of insurance was entered into between the parties and that the insurer's insertion of the aviation exclusion did not constitute an "alteration" of Baum's

application under the Louisiana statute. *Id.* at 1095-1096. Although the Court did not explain its reasoning in detail, it is clear from reading the decision that the change in coverage amount from $1.8 million to $1 million would be an alteration under the policy, but Baum agreed to it in writing as required by the Louisiana statute. The insertion of an aviation exclusion, however, was not an "alteration" of the application because apparently the application made no reference to whether the policy would contain an aviation exclusion and aviation exclusions are specifically permitted by Louisiana statute. *Id.* at 1095-1096, 1097. The Louisiana case is distinguishable because the changes in coverage made by MML on McGill's Application were changes in the specific coverage benefits described in the Application signed by McGill, not the insertion of an exclusion that the Application otherwise did not address at all.

Although apparently no Virginia court has construed § 38.2-3511(B), the Fourth Circuit has interpreted and applied a similar Virginia statute that prohibited an insurer from basing its defense of a claim on statements in an application unless a copy of the application is attached to the policy when issued. In *Evans v. United Life & Acc. Ins. Co.*, 871 F.2d 466 (4th Cir. 1989), the Fourth Circuit held that the insurer's violation of this statutory provision barred admission in evidence of the application to support the insurer's assertion that the insured falsely misrepresented in the application that he had not used tobacco in any form in the past twelve months despite the fact that he was then a smoker. In so holding, the Court specifically noted that the Virginia Supreme Court in construing this statutory provision found that it was "remedial, enacted for the benefit of the insured, and should be liberally construed to effect its evident purposes, which are to declare what shall constitute the contract between the insurer and insured ***." *Id.* at 470, *citing Southland Life Ins. Co. v. Donati*, 114 S.E.2d 595, 596 (Va. 1960).

## CONCLUSION

For all the foregoing reasons, and based upon all of the motion papers and oral argument presented to the Court, we respectfully request that this Court issue an Order rejecting the Report and Recommendation of the Magistrate, denying MML's motion for summary judgment, and granting McGill partial summary judgment on liability or permission to file and serve a cross-motion for partial summary judgment on the papers already before the Court, together with such other and further relief as to the Court seems just and equitable.

Dated: February 27, 2007

Respectfully Submitted:

*Counsel for Plaintiff*

By: **/s/ Alan J. Pierce**
Alan J. Pierce, Esq.

HANCOCK & ESTABROOK LLP
1500 Tower I, P.O. Box 4976
Syracuse, New York 13221-4976
Tel: (315) 471-3151

COIA & LEPORE
Jessica L. Basso, Esq.
226 South Main Street
Providence, RI 02903
Tel: (401) 751-5522

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the within Reply Memorandum Of Law On Behalf Of Plaintiff John L. McGill In Further Support Of Objections To The Magistrate Judge's Report And Recommendation on February 27, 2007. The Reply Memorandum is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the following counsel of record has been effectuated by electronic means:

Melissa Lang, Esq.
Harvey Pennington, Ltd.
1835 Market Street
Philadelphia, PA 19103

Timothy M. Bliss, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

I further certify that I served the within Reply Memorandum Of Law On Behalf Of Plaintiff John L. McGill In Further Support Of Objections To The Magistrate Judge's Report And Recommendation on February 27, 2007 by US Mail upon the following counsel of record:

Melissa Lang, Esq.
Harvey Pennington, Ltd.
1835 Market Street
Philadelphia, PA 19103

/s/ **Alan J. Pierce**
Alan J. Pierce

C. *"Eligible family member"* means the (i) spouse, (ii) dependent children, without regard to whether such children reside in the same household as the policyowner, (iii) children under a specified age not greater than nineteen years, and (iv) any person dependent on the policyowner. (1952, c. 317, § 38.1-348; 1986, cc. 550, 562; 1993, c. 306; 1994, c. 316.)

**Editor's note.** — Pursuant to § 30-152, effect has been given in this section, as set out above, to Acts 1986, ch. 550, which amended former § 38.1-348, the comparable provision in former Title 38.1.

**§ 38.2-3501. Policy forms; powers of Commission.** — Individual accident and sickness insurance policy forms and the rate manuals showing rules and classification of risks applicable to individual accident and sickness insurance policy forms shall be subject to the provisions of § 38.2-316. The Commission, subject to § 38.2-316, may disapprove or withdraw approval of any such policy form if it finds that the benefits provided in the policy form are or are likely to be unreasonable in relation to the premium charged. If the Commission disapproves a policy form or withdraws approval of a form, an insurer may proceed as indicated in § 38.2-1926. (1979, c. 726, § 38.1-362.8; 1986, c. 562.)

**§ 38.2-3502. Notice to be printed on policy; return of policy to insurer.** — A. Any individual accident and sickness insurance policy delivered or issued for delivery in this Commonwealth shall have printed on it a notice stating substantially:

"THIS POLICY MAY NOT APPLY WHEN YOU HAVE A CLAIM! PLEASE READ! This policy was issued based on the information entered in your application, a copy of which is attached to the policy. If you know of any misstatement in your application, or if any information concerning the medical history of any insured person has been omitted, you should advise the Company immediately regarding the incorrect or omitted information; otherwise, your policy may not be a valid contract.

RIGHT TO RETURN POLICY WITHIN 10 DAYS. If for any reason you are not satisfied with your policy, you may return this policy to the Company within ten days of the date you received it and the premium you paid will be promptly refunded."

B. If a policyowner returns the policy within ten days from the date of receipt, coverage under that policy shall become void from its inception upon the mailing or delivery of the policy to the insurer or its agent.

C. If the first paragraph of the notice required in subsection A of this section is inapplicable or partially inapplicable to a particular form of policy, the insurer may modify or omit the notice with the Commission's approval.

D. Nothing in this section shall prohibit an insurer from extending the right to examine period to more than ten days if the period is stated in the policy. (1966, c. 342, § 38.1-348.4; 1986, c. 562.)

**§ 38.2-3503. Required accident and sickness policy provisions.** — Except as provided in § 38.2-3505, each individual accident and sickness insurance policy delivered or issued for delivery in this Commonwealth shall contain the provisions specified in this section using the same words which appear in this section. An insurer may substitute corresponding provisions of different wording approved by the Commission that are in each instance not less favorable in any respect to the insured or the beneficiary. These provisions shall be preceded individually by the caption "REQUIRED PROVISIONS" or by such appropriate individual or group captions or subcaptions as the Commission may approve.