HARVEY ♦ PENNINGTON LTD.
ATTORNEYS AT LAW

Melissa Lang
Direct Dial: 215-575-4168
Direct Fax: 215-496-4824
E-mail: MELANG@HARVPENN.COM

29th Floor
1835 Market Street
Philadelphia, PA 19103-2989
(215) 563-4470
Fax (215) 568-1044
www.harvpenn.com

April 13, 2007

The Honorable William E. Smith
United States District Court
for the District of Rhode Island
One Exchange Terrace
Federal Building and Courthouse
Providence, RI 02903

Re: John McGill v. Minnesota Life Ins. Co.
Case No: 05-CV-481
Our File No. 73003-037

Dear Judge Smith:

The undersigned represent defendant, Minnesota Life Insurance Company, in the above referenced matter. Although we are aware that this Honorable Court frowns upon litigation by correspondence, we are constrained to reply to plaintiff's counsel's April 11, 2007 correspondence.

The April 11, 2007 correspondence by plaintiff's counsel is, if we may quote plaintiff's counsel's January 5, 2007 letter to Magistrate Judge Almond, "….a Supplemental Reply Memorandum of Law that is not called for under the Federal Rules of Civil Procedure or the Local Rules for the District of Rhode Island". However, the use of the April 11, 2007 correspondence as an "impermissible Supplemental Reply Memorandum" is, unfortunately, not the only concern raised as to the inappropriateness of such correspondence.

In the April 11, 2007 correspondence, plaintiff is requesting that the Court defer its ruling on the plaintiff's Objections to the Report and Recommendations of Magistrate Almond, recommending that the defense motion for summary judgment be granted, until such time as the Virginia Bureau of Insurance disposes of plaintiff's February 26, 2007 Complaint directed to Minnesota Life. The first question of concern is as to why plaintiff is bringing his administrative Complaint to the Virginia Bureau of Insurance to the Court's attention more than six weeks after it was filed, and when the issues raised by plaintiff's Objections have already been fully briefed by the parties, and oral argument on the Objections concluded on March 9, 2007. Clearly, if plaintiff believes that disposition of the administrative Complaint to the Virginia Bureau of Insurance was relevant to the court's disposition of the Objections to the Magistrate's Report and Recommendations, plaintiff could have brought the Complaint to the

Court's attention prior to or at the March 9, 2007 oral argument, rather than more than a month later. Accordingly, defendant respectfully requests that this issue be deemed waived by plaintiff's failure to bring it before the Court in a timely manner.

Also disturbing is plaintiff's blatant attempt to engage in claim splitting, which is generally disfavored as a matter of policy. Given Magistrate Almond's Report and Recommendations that summary judgment be entered in favor of the defendant, plaintiff is now trying to shop his claim to another forum, and, in effect, split off his state law claims, for alternative disposition. However, plaintiff did not assert that his claims were based on certain Virginia statutes until after the Magistrate's Report was issued. As the Court remarked from the bench during oral argument on plaintiff's Objections, the statute based arguments which plaintiff did not make before the Magistrate may be waived as a matter of law. However, plaintiff's failure to raise the statutory argument timely in this forum does not give the plaintiff free license to seek alternate disposition of the his claims before a state administrative agency.

Where, as here, concurrent federal and state subject matter jurisdiction exists over plaintiff's state law claims, plaintiff is expected to bring all of the claims in the same forum. 18 *Moore's Federal Practice* 3d § 133.50. As a general rule, claims splitting is disfavored. *Id.*, at § 133.51. The preclusion is the enforcement mechanism that prevents federal/state claims-splitting by ensuring that claims or issues which were or could have been litigated in one forum are barred from re-litigation in another. The principles of preclusion are premised on the desirability of avoiding wasteful, repetitive, and vexatious litigation. *Id.* The preclusion discourages claims splitting by compelling litigants to consolidate claims in a single proceeding, or risk forfeiting claims. *Id.* Thus, preclusion advances policies toward conserving judicial resources, as well as policies directed toward fairness to the opposing litigant. *Id., relying on, Restatement (Second) of Judgments* § 24 (1982); Gene R. Shreve, *Preclusion and Choice of Law*, 64 Tex. L. Rev. 1209, 1260 (1986).

With these principles in mind, this Honorable Court should not countenance plaintiff's improper attempt to do an "end run" around the forum in which the plaintiff himself chose to litigate all of his claims merely because he is faced with a potentially adverse result. Plaintiff cannot chose a forum in which to litigate his claims, and then seek an alternate forum when he does not like the result in the first.

It appears that plaintiff is trying to obtain an advisory opinion from the Virginia Bureau of Insurance on his late raised statute based arguments contrary to entry of summary judgment in favor of the defendant. However, such an opinion from an administrative agency, such as the Virginia Bureau of Insurance, is not entitled to full faith and credit from the Court. The Full Faith and Credit Act, 28 U.S.C. § 1738, commands that a federal court must accord a state court judgment the same preclusive effect it would be accorded by the rendering state. 18 *Moore's Federal Practice* 3d § 133.30 [1]. However, unreviewed state administrative agency findings, such as will be the outcome of plaintiff's complaint to the Virginia Bureau of Insurance, are not entitled to full faith and credit. *University of Tenn. v. Elliott*, 478 U.S. 788,

794, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). The Full Faith and Credit Act applies only to state court judgments, not administrative agency decisions. 18 *Moore's Federal Practice* 3d § 133.02[3][b][ii].

If plaintiff believes that this Honorable Court is incompetent to read the plain language of the Virginia statutes he has cited to determine whether such statutes have any applicability to plaintiff's claims (setting aside the fact that these arguments were waived by plaintiff's failure to bring them before the Court in a timely fashion), the proper procedure for plaintiff to follow would be to petition the Court to seek certification of the question of the applicability of the statutes to the Virginia Supreme Court for construction. 18 *Moore's Federal Practice* 3d § 133.14[3][c], *relying on, Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). However, the use of such procedure in any given case rests within the sound discretion of the district court. *Lehman Bros., supra.*, at 94 S.Ct. 1744.

In his concurring opinion in *Lehman Bros., supra.*, the late Chief Justice (then Associate Justice) Renquist wrote:

> Presumably the judges of the district courts and of the courts of appeals are at least as capable as we are in determining [a particular question of state law].
>
> State certification procedures are a very desirable means by which a federal court may ascertain an undecided point of state law…..But in a purely diversity case such as this one, the use of such procedures is more a question of the considerable discretion of the federal court in going about the decisionmaking process that it is a question of a choice trenching upon the fundamentals of our federal-state jurisprudence.
>
> While certification may engender less delay and create fewer additional expenses for litigants than would abstention, it entails more delay and expense than would an ordinary decision of the state question on the merits by the federal court (citations omitted)….. Thus while the certification procedure is more likely to produce the correct determination of state law, additional time and money are required to achieve such a determination.
>
> If a district court or court of appeals believes that it can resolve an issue of state law with available research materials already at hand, and makes the effort to do so, its determination should not be disturbed simply because the certification procedure existed, but was not used. The question of whether certification of the facts of this case, particularly in view of the lateness of its suggestion by

> petitioners, would have advanced the goal of correctly disposing of this litigation on the state law issue is one which I would leave, and I understand that the Court would leave, to the sound judgment of the court making the initial choice.
>
> 94 S.Ct. 1745-46.

It is clear from the concurring opinion of the late Chief Justice of the Supreme Court that a litigant's delay in seeking review of a state court issue by a court other than the district court in which the litigation is pending, mitigates strongly in favor of the district court using its own resources and intellectual capacity to resolve the issue without going to another tribunal.

Lastly, it must be noted that what the plaintiff presented to the Virginia Bureau of Insurance is not evidence subject to review by an impartial trier of fact, but is little more than what is referred to in the contemporary media as "spin". Accordingly, the disposition of the plaintiff's complaint by the Virginia Bureau of Insurance will likely require the scrutiny of judicial review if it is to be competent to provide guidance to this Honorable Court.

On behalf of Minnesota Life Insurance Company, we thank the Court for consideration of the positions asserted in this correspondence.

Respectfully yours,

Melissa Lang /TMB
MELISSA LANG
Pro Hac Vice

VETTER & WHITE

/s/ Timothy M. Bliss
BROOKS R. MAGRATTEN, No. 3585
TIMOTHY M. BLISS, No. 6228

cc:

Alan J. Pierce, Esquire
Jessica L. Basso, Esquire