***EXHIBIT "A"***

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

JOHN L. McGILL CA No. 05-481 S

v PROVIDENCE, RI
DECEMBER 21, 2006

MINNESOTA MUTUAL LIFE
INSURANCE COMPANY

BEFORE MAGISTRATE JUDGE LINCOLN D. ALMOND

APPEARANCES:

FOR THE PLAINTIFF: ALAN PIERCE, ESQ.
HANCOCK & ESTABROOK,LLP
1500 MONY Tower 1
PO BOX 4976
Syracuse, NY 13221-4976
315-471-3151

FOR THE PLAINTIFF: JESSICA L. BASSO, ATTY
COIA & LEPORE

FOR THE DEFENDANT: MELISSA LANG, ATTY
HARVEY PENNINGTON, LTD.
1835 Market Street
Philadelphia, PA 19103
215-563-4470

FOR THE DEFENDANT: TIMOTHY M. BLISS, ESQ.
VETTER & WHITE
20 Washington Place
Providence, RI 02903
401-421-3060

cancer or something else, and they send back either a very extreme restriction, they offer in response a very extreme restriction of benefits or a denial, and then that doesn't get communicated to him and so then he says, well, too bad, you're stuck with giving me full coverage now even though I had this serious health issue, and the whole purpose of the physical exam was that was a condition of the contract, the condition is you have to go and satisfy the exam. So it seems to me he's sort of backdooring around the physical based on your facts. Do you believe he's allowed to do that solely because the delivery of the policy isn't clear that it went to him but to Mickey Doyle?

MR. PIERCE: At least in part, largely. The answer from Minnesota to avoid that problem is to make sure that their agent delivered the policy to the insured and that they have proof that the policy was delivered to the insured, and what's important, Ms. Lang mentioned that when I came in today I gave her a copy of a Virginia statute that I did not have. I have a copy for the Court if you'd like it.

THE COURT: Yes. Why don't you come forward, you can present it to my clerk. Why don't we identify this as -- Mr. Pierce, your declaration had attached to it 24 exhibits. Why don't we call this Plaintiff's Exhibit

25. Am I right? Is that your last exhibit, 24?

MR. PIERCE: Yes, your Honor.

THE COURT: All right. You have a copy of this, Ms. Lang?

MS. LANG: Yes, I do, your Honor.

THE COURT: All right. I've just been handed what is identified as Plaintiff's Exhibit 25 as Section 38.2-3502 of the Virginia code. All right.

MR. PIERCE: And my argument is, your Honor, between the language of the application itself and this Virginia statute, which I believe, and I haven't briefed it or -- it talks about -- this statute says that for any individual accident and sickness insurance policy delivered or issued for delivery in Virginia shall have printed on it a notice, and I'm not going to read it, but the gist of the statute, I believe, I'll give the Court a chance to read it, is that the insured, such as Mr. McGill, has ten days after the policy is delivered to him to accept or reject it. He was never given his right under Virginia law to accept or reject Minnesota Mutual's policy because it was never delivered to him.

THE COURT: So what is the legal significance of that? Does it give him a right to void it? A right to return the premiums? Does it give him a right to some civil penalty under Virginia law?

I'm not quoting it, that small companies may not have enough money to go into a group plan so they buy individual policies for their employees. Well, we know that's not the situation because they have a group plan. The contract here between the Minnesota Mutual individual policy that Mr. McGill had and the Trans General group plan that Interflex had for all of their employees, I think is very important to this issue, and it shows Interflex had --

THE COURT: So your position is they had a group plan and then a few people were introduced to this broker to buy a better plan if they wanted to?

MR. PIERCE: Something to supplement it because it didn't provide more than $2,500 a month, and that's the ERISA governed plan that Interflex had.

THE COURT: All right. You asked for permission, Ms. Lang, to respond on the infamous section 38.2-3502 of the Virginia code. Do you wish to do that?

MS. LANG: Yes, your Honor.

THE COURT: All right.

MS. LANG: Looking at this code section, I don't see anything here which purports to expand contract benefits as a result of any issue regarding delivery. And I think that this delivery issue is really a red herring here, your Honor. What counsel is trying to do

is bootstrap what is in essence a negligence claim, this purported failure to deliver into a breach of contract claim. And I noted that what counsel is saying the planned for policy, the policy that Minnesota Mutual was going to provide, and the amendment to the coverage. But what's critical here, your Honor, in fact, there was no coverage to be amended until the policy was issued and bound with the five year benefit plan. The ratification of the changes issue is if plaintiff did not want this policy, if he did not want to accept the benefits of this policy, if he did not want to ratify these changes, he could have rejected them. Maybe he didn't get the policy until '95. Right before he --

THE COURT: But couldn't the plaintiff, in a case like this, sit back and say I thought I was getting a policy through age 65 to protect me and my family, I never got the policy. I thought everything was good. I'm paying the benefits. If I had known this was a five year policy I would have gone elsewhere and found another policy.

MS. LANG: But that's not the claim here, your Honor. It's not the claim that I would have gone somewhere else, and that I could have obtained coverage elsewhere, which would have to be the subject of --

THE COURT: I'm not saying it's the claim, but

isn't that a, if I accept your argument that it really doesn't matter whether the policy was delivered to him or not, isn't that the harm to him? Part of the harm is he thought he was getting a policy to take him to age 65 and he wasn't.

MS. LANG: But that's a negligence claim. That's not a breach of contract claim. The only thing plaintiff agrees, the only thing that survives here, beyond the statute of limitations, is a breach of an express written contract, and the only express written contract is this policy, and he claims that the fact that this was handwritten on here by the underwriter at issue, and he didn't ratify it, means that he had another policy, the breach of which he's entitled to recover for. He never had another policy. There is not an amendment to coverage here. There is one policy that was issued in July of 1992. That's the contract. That contract hasn't been breached. And the fact that it was delivered to Mrs. Doyle, I think just adds to the fact that this was an ERISA governed policy goes to the employer, not to him. And if he thought that he had coverage that was individual, why didn't he say where is my policy. That never occurred. And when he went on claim, he was perfectly happy to accept the benefits payable by the policy that was issued, and he had the

policy before he submitted the claim. He admitted that in his deposition testimony. Thank you, your Honor.

THE COURT: All right. I'm going to take the matter under advisement. I will issue a Report and Recommendation assuming that neither side moves to disqualify me. I won't take any action on the case for two weeks. Mrs. Noel, can you check what would be a date two weeks out so I can calendar that? All right. Why don't we say January 5. I'll calendar it for January 5, ask both sides to discuss with their clients the disclosure I made at the start of this hearing that I do have a Minnesota Mutual Life Insurance policy. Does anyone have any questions about that policy, they want more information? You're shaking your head no, Mr. Pierce? Ms. Lang?

MR. PIERCE: No, thank you, your Honor.

MS. LANG: I'm familiar with the product, your Honor.

THE COURT: All right. I had a policy. I kept paying the premium after I left my old job. I still have it. Hopefully, I won't ever have to use it. I'll work forever. All right. So I will wait. If I don't receive any letter or motion -- excuse me. If I don't receive a motion to disqualify me, if one is not filed by January 5, I'd assume neither side has an objection